Burge, et al. *v.* Board of Supervisors

Pearl River County.

Mar. 24, 1952.

No. 38451 (57 So. (2d) 718)

Thigpen & Stewart, for appellants.

Morse & Morse, and **J. B. Mayfield**, for appellee.

McGehee, C. J.

This is a proceeding for the issuance of the bonds of Supervisors' Districts 1, 2 and 3 in Pearl River County for the purpose of constructing a building or buildings in which to operate an industry for the manufacture of garments, or a similar type of enterprise, under and by virtue of the authority of Chapter 241, Laws of 1944, and amendments thereto, known as the ''Balancing of Agriculture with Industry'' program in Mississippi.

The matter came on to be heard upon objections of the appellants E. N. Burge and other taxpayers, whereby they protested to the board of supervisors of the county against the acceptance of the report of the county election commissioners as to the result of an election held on

November 6, 1951, showing that a majority of the qualified electors in the said supervisors' districts had voted in the election and that more than two-thirds of those voting had cast their ballots for the issuance of such bonds. The objections of the taxpayers to the acceptance of the report of the election commissioners were: (1) that the report was insufficient in law in that it failed to set forth the facts from which the board of supervisors could determine that a majority of the qualified electors of *each* district voted in the election, and (2) in failing to show that two-thirds of those voting in the election in *each* of said districts voted in favor of the proposed bond issue; and that the board of supervisors therefore did not adjudicate these facts.

The objections of the appellants having been overruled by the board of supervisors, an appeal to the circuit court was taken on a bill of exceptions and the action of the board of supervisors was there affirmed.

It is conceded by the appellants in their brief, and the fact is fully borne out by the record, that there were a total of 2807 qualified electors residing in the three supervisors' districts as a whole; that of this total 559 resided within the Town of Poplarville in District 1, within or near which the proposed factory building is to be located, and that 2248 resided outside the said town in all of the three districts; that 1678 votes were cast in the election, of which 434 were cast within the Town of Poplarville and 1244 were cast outside the corporate limits thereof; that a majority of the qualified electors within the town voted in the election, and that a majority of the qualified electors residing in the three districts outside the corporate limits of the town voted in the election, and that therefore a majority of the total number of qualified electors in the three districts combined had voted in the election; that outside of the town 886 votes were cast for the bond issue and 358 votes were cast against the same, and that within the town 414 votes were cast for and 20 votes were cast against the issuance of the said bonds.

The report of the election commissioners further stated in express terms that more than two-thirds of the qualified electors residing within the town, and voting in the election, voted in favor of the bond issue, and that more than two-thirds of the total number of the qualified electors in all three districts residing outside the town, and voting in said election, voted in favor of the bond issue; and that in excess of 51% of the qualified electors of each of said districts voted in the election, and that in excess of 51% of the qualified electors of the town voted in the election, and that in excess of 51% of the qualified electors of that portion of district No. 1 lying outside of said town voted in the election, when computed and declared separately. And the board of supervisors in accepting and approving this report by an order on its minutes likewise adjudicated in effect the foregoing facts.

As heretofore stated, this report of the election commissioners, which the board of supervisors adjudged to be "sufficient and proper in the premises", nowhere set out the actual vote cast within *each* of the three districts, and it is therefore contended that the report of the election commissioners, as approved by the board of supervisors, shows no facts that would justify a finding that a majority of the qualified electors in *each* district voted in the election and that the election carried by a two-thirds majority of those voting in *each* district, when computed and declared separately.

Section 10 of Chapter 241, Laws of 1944, as amended, still provides, among other things, as follows:

"Where the separate supervisors' district or districts of a county indicate a desire to enter into the plan herein authorized, but not to affect the remainder of the county, then the board of supervisors shall direct the holding of said election only in the supervisors' district or districts affected, and the board of supervisors is hereby authorized to carry out the provisions of this act for such separate supervisors' district or districts.

"In the event the proposal to be voted on at the election required by this act includes bonds to be issued covering a supervisors' district or districts, but not the entire county, includes a town or city of a population of more than five hundred, as well as territory outside the corporate limits of such town or city and the proposed enterprise is to be located in such town or city of within one mile of the corporate limits thereof, the qualified electors voting in the election residing outside the corporate limits of the town or city shall vote separately from those residing in such town or city.

"All qualified electors shall vote at their usual voting places and in event the usual voting place of electors residing outside the corporate limits of such town or city is in such town or city, such elector shall vote in a separate ballot box provided for the purpose, and the officers holding the election shall make separate returns of the results of the vote of those residing within the town or city and those residing outside such town or city.

"Unless two-thirds of the qualified electors residing in such town or city voting in the election and two-thirds of the qualified electors residing outside such town or city voting in such election shall vote for the proposed bond issue, computed and declared separately, the proposed bond issue shall be declared as disapproved.

"It shall be the duty of the county election commissioners to provide necessary ballot boxes, separate voting lists containing the names of electors residing within and without the corporate limits of town and cities when such is required by the proposal submitted, and records for the conduct of the election in accordance with the requirements of this section."

The first paragraph of Section 10 of the Act, which immediately precedes the foregoing quoted paragraphs, requires that "the total number of votes cast in the election shall be a majority of the electors of the territory included in the proposal" and prescribes the conditions and on what notice to the qualified electors an election

may be held, and all of which conditions set forth in said paragraph were fully complied with, including the obtaining of a certificate of public convenience and necessity from the Agricultural and Industrial Board of the State for the establishment of such industry, and all of which conditions and the manner of the giving of such notice of the election are, in our opinion, fully and affirmatively adjudicated on the minutes of the board of supervisors, except that it is not specifically adjudicated as to how these supervisors' districts indicated "a desire to enter into the plan" authorized by the Act.

However, it is to be noted that the provision of the Act hereinbefore first quoted which reads "Where the separate supervisors' district or districts of a county indicate a desire to enter into the plan herein authorized, but not to affect the remainder of the county, then the board of supervisors shall direct the holding of said election only in the supervisors' district or districts affected,   *   *   *",  does not prescribe *how such a desire is to be indicated.*

Chapter 1 of the First Extraordinary Session Laws of 1936—the original Balance Agriculture with Industry Act—provided for the calling of an election upon a petition of at least 20% of the qualified electors in the territory to be affected. The Act of 1936 was repealed by Chapter 147, Laws of 1940, but, in the language of the brief on behalf of the appellants, "Chapter 241 of the General Laws of the State of Mississippi Regular Session 1944 is to all intents and purposes a re-enactment of Chapter 1 of the Laws of the State of Mississippi First Extraordinary Session 1936, with, of course, some changes".

However, the provision of the Act of 1936 requiring a petition of at least 20% of the qualified electors of the territory as a condition precedent to the calling of the election, was omitted from Chapter 241, Laws of 1944, and subsequent amendments thereto. Consequently, it was left to the sound judgment and discretion of the board of supervisors to determine how and when a desire to enter into the plan has been sufficiently indicated.

In the instant case there was a petition submitted to the board of supervisors which contained the names of 1021 qualified electors residing in the three supervisors' districts as a whole, asking for the holding of such an election, and this fact was affirmatively adjudicated by the board, and all this was done notwithstanding the fact that in the Act of 1944, as amended and now written, such a requirement was omitted from the provisions thereof. We are of the opinion that the board of supervisors was justified in holding that the petition in the instant case was a sufficient indication of a desire to enter into the plan, since the legislature itself in the original Act of 1936 deemed a petition of 20% of the qualified electors to be a sufficient indication from the territory to be affected of a desire to enter into the plan, and to justify the calling of an election; and the legislature by the Act of 1944, and the subsequent amendments thereto, seems to have left it to the judgment and discretion of the board of supervisors to determine when such a desire has been indicated.

It is argued by the appellants that it was contemplated by the legislature that two-thirds of the qualified electors in *each* of the supervisors' districts affected should indicate such a desire before the board would have been justified in calling an election, but we think that the purpose of the election was to ascertain whether or not at least two-thirds of the qualified electors voting in the election desired to enter into the plan. It is not to be assumed that the legislature intended to require that two-thirds of all of the qualified electors in the territory to be affected should indicate a desire to enter into the plan before an election could be called, since it is required that only two-thirds of those voting in the election (provided a majority of the qualified electors in the territory should vote in the election) shall be sufficient to carry the election for the bond issue. The legislature having left the board of supervisors without a method of determining when a desire has been indicated under the present Act, we conclude

that the legislature assumed that the members of the board of supervisors from the districts to be affected are usually conversant with local sentiment, and would know when a desire of the electors to enter into the plan has been sufficiently indicated to justify the calling of an election, leaving it to the vote of two-thirds of those voting therein to determine whether the bonds should be issued.

We are of the opinion that there is considerable merit in the argument on behalf of the appellants that the statute when construed as now written, and given the meaning adopted by the judgment appealed from, would afford an opportunity for supervisors' districts Nos. 1 and 3 to bring supervisors' district No. 2 into the area to be affected by the bond issue and without the consent of two-thirds of those voting in the election who reside in the latter district; and that the Act when so construed would enable districts Nos. 1 and 3 to bring district No. 2 into the area to be affected by the bond issue even though less than a majority of those voting in the latter district should have voted for the bond issue, or even though all of those voting in district No. 2 may have voted against the bond issue, and that districts 1 and 2 could likewise prevail over district 3; that this probability would afford the opportunity for, and actually result in, the municipalities near county lines being discriminated against under the Act in question. But such is the statute as now written and we have no authority to amend the same, that being a matter for the legislature.

The statute as now written would permit the portion of supervisor's district No. 2 which is located in the trade area of the town of Lumberton, in Lamar County, to be drawn into the plan for the location of an industry at Poplarville, in Pearl River County, and district No. 2 of the latter county to be taxed for that purpose, without the consent of two-thirds or of even a majority of the qualified electors of the said supervisor's district; and it is therefore urged that to so construe the Act would

render the same unconstitutional as being a denial of due process of law. No cases in point are cited on this question, and even to doubt the constitutionality of an act is to hold the same constitutional, since ▮▮ the unconstitutionality of a law must appear beyond a reasonable doubt before we would be justified in striking down the same after it has come to us with the sanction of both the legislative and executive branches of the state government.

Chapter 245, Laws of 1946, makes provision for supervisors' districts of adjacent counties to join in the plan. This Act provides that after the certificate of public convenience and necessity has been issued according to law, the respective boards of supervisors affected shall call an election in each of the supervisors' districts affected, in the manner set out in Section 10, Chapter 241, Laws of 1944, and that if two-thirds of the qualified electors in *each* of the supervisors' districts affected, and voting in the election, vote in favor of the enterprise, then, the supervisors' districts included shall be deemed a municipality within the meaning of Chapter 241, Laws of 1944.

Chapter 320, Laws of 1946, provides that whenever a supervisor's district or a city, town or village in a supervisor's district, or both, which adjoins a supervisor's distict in the same county, already having a certificate of convenience and necessity issued under Chapter 241, Laws of 1944, and which has already voted to engage in an enterprise under the provisions of said Act, desires to join in the enterprise, the adjoining supervisor's district or city, town or village, or both, wishing to so join, may make application for a certificate of convenience and necessity the same as if such supervisor's district or city, town or village, or both, had joined with the supervisor's district already having a certificate of convenience and necessity in its original application; and that when such certificate of convenience and necessity is issued authorizing the petitioning municipality to join in the operation of the enterprise, the proceedings thereafter shall be

held *within such municipality* as is provided in Chapter 241, Laws of 1944, with reference to notice, voting and election, and such municipality may issue its bonds in such amount as may be authorized by the board for the enlargement and extension of the enterprise; that all provisions of Chapter 241, Laws of 1944, so far as the same are applicable, shall apply to all proceedings by the municipality desiring to join with another municipality which has .already received a certificate of convenience and necessity; and that the word "municipality" shall mean "county, supervisor's district, city, town or village". This Act seems to contemplate that a majority of the qualified electors in the territory *to be added* shall vote in an election and that two-thirds of those voting shall vote in favor of the proposition.

Chapter 520, Laws of 1950, provides that where a muicipality located in two adjacent counties which forms a part of a municipal separate school district, *the territory of which is located in two adjacent counties,* desires to enter into such a plan jointly with the territory forming the municipal separate school district, it shall indicate its intention by resolution on the minutes of the municipality and shall jointly, with the respective boards of supervisors, apply for a certificate of public convenience and necessity according to Section 9, Chapter 241, Laws of 1944, and that upon the issuance of the certificate an election shall be had according to said Chapter 241, Laws of 1944, and the territory within the municipality shall vote as a unit, and the territory outside of the municipality shall vote as a unit, and two-thirds of each unit voting shall vote in favor of a proposed bond issue; otherwise the bonds shall not be issued.

Thus it will be seen that the enactments subsequent to Chapter 241, Laws of 1944, and amendatory thereof in the sense that they enlarge the powers conferred by the Act of 1944 to take care of situations not therein specifically provided for do not cover the situation presented in the instant case where two or more supervisors' districts,

within the same county and less than the whole county, shall enter into the plan. The provisions of Chapter 241, Laws of 1944, covering the situation which prevails in the instant case, and which have not been amended in that particular, only provide for the election to carry by two-thirds of those voting in the municipality and by two-thirds of those voting outside of the municipality, considered separately as two voting units, provided a majority of the qualified electors inside the municipality and a majority of those outside of the municipality shall vote in the election.

We are urged by the appellants to consider the election as being in four voting units with the votes computed and declared separately, and to hold that a majority of the qualified electors in the municipality shall vote, that a majority of those in supervisor's district No. 1 outside of the municipality shall vote, that a majority of those in supervisor's district No. 2 shall vote, and that a majority of those in district No. 3 shall vote, and that in each instance two-thirds of those voting in each of these units, when computed and declared separately, shall vote for the issuance of the bonds, before the same can be validly issued. We have concluded that we are not justified in so holding, even if we may be of the opinion that the statute should have so provided. We are confined to a construction of the statute as written, and we do not think that we should hold that two-thirds of those voting in each of the supervisor's districts should have voted in favor of the bond issue to render the same valid, on the ground that by Chapters 245 and 320, Laws of 1946, and Chapter 520, Laws of 1950, the legislature provided, in dissimilar situations to the one here involved, for the election to carry by a two-thirds vote in each voting unit, because in our opinion such is not required by the provisions of the statute under which the instant proceeding is being conducted.

We are, therefore, of the opinion that the judgment of the circuit court in affirming the action of the board of

supervisors in the ordering of the issuance of the bonds now in question should be affirmed.

Affirmed.

**Hall, Lee, Arrington** and **Ethridge, JJ.**, concur.