# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00347-SCT

*LENT E. THOMAS, JR.*

*v.*

*BOARD OF SUPERVISORS OF PANOLA*
*COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/2009 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL KEVIN GRAVES |
| ATTORNEY FOR APPELLEE: | DARRIN JAY WESTFAUL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     The Panola County Board of Supervisors (the Board) rezoned a five-acre parcel owned by Chris Aldridge from an agricultural to an industrial classification at its January 14, 2008, meeting. The Board also granted a special exception to Aldridge to operate a recycling facility/junkyard on the property.

¶2.     Lent E. Thomas, Jr., filed an appeal from the Board's decision in the Circuit Court of Panola County, Second Judicial District, Mississippi. He also filed a bill of exceptions. The circuit court affirmed the Board's decision to rezone the five acres from an agricultural to an

industrial classification and affirmed the special exception to operate a recycling facility/junkyard. Thomas appeals this ruling, raising four issues.

1. The lower court erred in affirming the order of the Board of Supervisors rezoning Aldridge's property from agricultural to industrial as the order was not supported by substantial evidence and was arbitrary and capricious.

2. The lower court erred in affirming the order of the Board of Supervisors rezoning Aldridge's property from agricultural to industrial as the rezoning order constituted impermissible spot-zoning.

3. The lower court erred in affirming the order of the Board of Supervisors granting a special exception for the operation of a junkyard on Aldridge's property as the order was not supported by substantial evidence and was arbitrary and capricious.

4. The lower court erred in ruling that the provision of the Panola County Zoning Ordinance was not impermissibly vague thereby making the approval of Aldridge's request for a special exception arbitrary and/or capricious and/or unconstitutional.

¶3. We find that the trial court did not err in affirming the Board's decision to rezone from an agricultural to an industrial classification and to grant a special exception for the operation of Aldridge's junkyard. This Court affirms the judgment of the Circuit Court of Panola County, Second Judicial District.

**PROCEEDINGS**

¶4. In 2002, Panola County adopted the Panola County, Mississippi, Land Use District Ordinance. The ordinance was a comprehensive zoning plan for Panola County.[1] In 2006,

---

[1] The title and purpose of the ordinance provides:

a. Title - This Ordinance shall be known as the "Panola County Land Use District Ordinance" and may be so cited.
b. Purpose - the purpose of this ordinance is to:

2

Aldridge bought a five-acre parcel of land located on Chapeltown Road near Highway 6 in Panola County. Previously, a concrete plant operated on the site, which manufactured and sold concrete products, although at the time that Aldridge bought the property, concrete production had ceased and only office staff remained on the premises. However, under the land-use district ordinance, the five-acre parcel was zoned agricultural.

¶5. Aldridge applied for a special exception to the ordinance to operate a junkyard on the premises. The Board granted Aldridge's request for a special exception to the ordinance. In the first of two appeals, Thomas appealed the Board's grant of a special exception to the Panola County Circuit Court, Second Judicial District. The circuit court reversed the Board's grant of the special exception to the ordinance. In so doing, the circuit court determined that the ordinance had no provision for a special exception to operate a junkyard or salvage yard in an *agricultural* zone. Because the ordinance did not permit a junkyard in an agricultural zone, the circuit court found no legal basis for the Board's decision, and the decision was determined to be arbitrary and capricious.

---

i.      Serve the public health, safety, and general welfare of Panola County
ii.     Classify property in a manner that reflects its suitability for specific uses
iii.    Promote stable, attractive development within the County
iv.    Promote the economic development of the County
v.      Conserve the value of land as a sound investment
vi.    Encourage compatibility of adjacent land uses
vii.   Protect environmentally sensitive areas
viii.  Further the goals and policies of Progress Panola: The Future of Growth and Development in Panola County, Mississippi, 1998.

Panola County, MS, Panola County Land Use District Ordinance (March 22, 2002).

¶6.    Following the circuit court's decision, Aldridge filed an application to rezone his five acres from agricultural to industrial and for a special exception to the ordinance to operate a recycling center/junkyard in the industrial zone. Pursuant to the ordinance, a junk or salvage yard was not a permitted use in an industrial district. However, the ordinance provided that a junk or salvage yard might be granted a special exception to operate in an industrial district.

¶7.    The Commission had a public hearing and made a recommendation to the Board to allow rezoning and the special exception. The Commission also recommended that the junkyard be limited to: operating under the special exception for five years before another review, opening from 7:00 a.m. to 5:30 p.m. for six days a week, and no burning on the premises.

¶8.    At the hearing, the Board heard the presentation of Aldridge's counsel with his summary of the history of the request for rezoning and the special exception. At the conclusion of the hearing, the Board voted five to zero to adopt the recommendation of the Panola County Land Development Commission to rezone the land from agricultural to industrial and to grant the special exception for a junkyard.

¶9.    The record contains the summary presented by Aldridge's counsel on the history of the request for rezoning and special exception. The record also contains a list of "physical evidence" in support of Aldridge's application for rezoning and a special exception. Similar to the arguments and copies of documents provided at the hearing, the record has (1) an aerial map of Aldridge's five acres and the surrounding landscape; (2) the Panola County, Mississippi, Land Use District Ordinance; (3) the Panola County Land Use District Map; (4)

4

a handwritten list of businesses located on Highway 6 in the county and city; (5) Aldridge's application for rezoning and a special exception; (6) proof of the notice of publication requesting reclassification and a special exception; (7) a copy of the deed for Aldridge's property; and (8) various photocopies of photographs depicting the facility and operations.

¶10.    The "physical evidence" list also references (1) all building and occupancy permits granted after the adoption of the ordinance; (2) certified copies of all minutes of every Panola County agency; (3) copies of all documents controlled by Panola County demonstrating population, businesses, and commercial and business expansion growth on Highway 6 west of Batesville; and (4) copies of any documents within the control of Panola County demonstrating that the property was used for industrial purposes when the ordinance was adopted, or any documents indicating a mistake in failing to zone the property industrial at the time of adoption of the ordinance. These four items are not contained in the record but were in accordance with Aldridge's counsel's request at the hearing for the Board to consider these items in its decision. Thomas's counsel objected to the general request at the hearing.

¶11.    The Board also heard the presentation of Aldridge's counsel that the junkyard was fenced and operated in a neat manner with nothing thrown around the area like a traditional junkyard. The junkyard accepted ferrous (iron) and nonferrous materials. The material was bundled, pressed, and placed on pallets. Batteries also were accepted for disposal at the business. Once the batteries were accepted, they were bundled, sold, and disposed by another buyer. Aldridge's business provided a place to dispose of the unwanted items, and the taxpayers did not have to dispose of the property in landfills. Counsel for Aldridge indicated that most of the commercial and industrial businesses in existence in the area at the

5

time of the adoption of the ordinance in 2002 also were zoned agricultural. The Board also heard that the area had changed with population growth. Applications for occupancy permits and applications for expansions of businesses in the area had increased. Aldridge requested that the Board draw from its own knowledge of the area and all documents within its control on this issue.

¶12. The Board heard that the junkyard would provide a public benefit by its convenience and by having a location to dispose of the "garbage" instead of having it thrown around the county, affecting the environment. Aldridge also presented that a public need existed for the facility, as evidenced by the fact that his business had had a successful year in operation. The Board also heard that there was an all-around public benefit, in that the community had a place to dispose of its property, and the Board and taxpayers did not have to pay for its disposal in landfills or have to have a special place to dispose of batteries and other types of material of that nature.

¶13. Aldridge's counsel also stated that the facility was connected to the public safety and health because throwing batteries in ditches leaves garbage strewn around the community, it harms the environment, and it lowers property values. Prior to the circuit court's first decision reversing the Board's grant of a special exception in an *agricultural* area, Aldridge operated his facility with no impact to anybody. His counsel estimated that only three residents are near to Aldridge's operation.

¶14. On the other hand, Thomas presented his objections through his counsel and had Brenda Solomito, a professional land planner, and John Fiser, a real estate appraiser, testify at the hearing. Thomas's counsel stated that the administrator at the Planning Commission

6

had stated that the only change to the area since 2002 was the issuance of one special exception to operate a used-car lot between the city limits of Batesville and the Tallahatchie River. This area already had at least three used-car dealerships. Later, counsel for Thomas stated that Heafner Motors's expansion, adding 1,000 square feet to its facility, did not change the character of the neighborhood.

¶15. Solomito testified about substantial change in the neighborhood. She stated that a traditional neighborhood is located within an approximate one-mile radius from the site at issue. The Tallahatchie River is approximately 2.27 miles from the site, and the city limits are approximately 1.8 miles from Aldridge's property. Within the one-mile radius, most of the property is farmland. In addition, the area has active agricultural operations and single-family residences. The area also has some businesses which pre-existed the 2002 ordinance. Solomito stated that, for the most part, no significant change had occurred in the area since 2002. Solomito opined that "[t]here has been no change in the character of the area because it is still primarily agricultural, single-family with some other preexisting uses. So in my professional opinion, this application does not comply with your law which is your comprehensive plan or your land use map or your zoning ordinance definitions."

¶16. Fiser testified concerning property values. He viewed the property in question and the surrounding neighborhood. While the area is mostly agricultural, Fiser explained that five or six houses and five or six commercial properties were within a half-mile of Aldridge's property. Within a half mile to the east of the property is a store, a restaurant, and a school. Located within about a one-third mile to the west of the property is Hood Implement, a Case

tractor business. Almost directly across the street from the property is a John Deere dealership, as well as four to six houses.

¶17. Fiser did not know how Aldridge ran his business, however, he had appraised a house across the street from a junkyard in Sardis. He decreased the appraisal value of that house based on the junkyard and its condition. In Fiser's opinion, a decrease in property value would occur if Aldridge ran his business as a typical scrap yard. However, Fiser stated that he had not observed how Aldridge operated his business, and he did not know how an appraisal would be affected if the materials were compressed and placed into containers.

¶18. Following the presentations and testimony on behalf of Aldridge and Thomas, the Board heard testimony from members of the Panola County Land Development Commission. These members stated that the Commission recommended a change in zoning and a grant of a special exception, with restrictions, to operate the facility. Amy Thomas, a nearby landowner, testified on her own behalf and objected to Aldridge's application for rezoning. Aldridge also testified on his own behalf at the hearing, stating that some nearby landowners had apologized to him and had brought their unwanted materials to his scrap yard. The Board then voted five to zero to grant the change in zoning and the special exception.

¶19. Thomas again filed an appeal and a bill of exceptions in the Panola County Circuit Court. The circuit court affirmed the Board's decision. Thomas appealed to this Court.

## DISCUSSION

¶20. Issues of zoning are not judicial, but rather, legislative in nature. *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988). "Upon reviewing zoning cases the cause is not tried de novo but the circuit court acts as an appellate court only." *Broadacres, Inc. v. City of*

8

*Hattiesburg*, 489 So. 2d 501, 503 (Miss. 1986). *See also* **Perez v. Garden Isle Cmty. Assoc.**, 882 So. 2d 217, 219 (Miss. 2004) ("This Court has also held that the circuit court acts as an appellate court in reviewing zoning cases and not as the trier of fact."); **City of Jackson v. Sheppard Inv. Co.**, 185 So. 2d 675, 676 (Miss. 1966) ("the cause is not tried de novo in the circuit court" and the circuit court "was not the trier of facts and, in accordance with the statute, acted as an appellate court only").

¶21.   In **Mississippi Department of Corrections v. Harris**, 831 So. 2d 1190, 1192 (Miss. Ct. App. 2002), the Court of Appeals, in an Employee Appeals Board case, set forth the appropriate standard of review by the appellate court when an agency's decision has been reviewed by the circuit court:

> The circuit court as the first-level appeals court affirmed the decision of the Employee Appeals Board.  Even so, this Court again looks at the same record that was made at the agency whose decision is the subject of this appeal, and applies the same review standard to it regardless of whether the circuit court affirmed or reversed that decision.

*Harris*, 831 So. 2d at 1192.  *See also* **Bynum v. Miss. Dep't of Educ.**, 906 So. 2d 81, 91 (Miss. Ct. App. 2004) (citing *Harris*, 831 So. 2d at 1192) (In an Employment Appeals Board case, the Court of Appeals stated that "[r]egardless of the conclusion of the circuit court, our review focuses on the agency decision").  In **Childs v. Hancock County Board of Supervisors**, 1 So. 3d 855, 861 (Miss. 2009), this Court stated:

> If the Board's decision is founded upon substantial evidence, then it is binding upon an appellate court, *i.e.*, the Circuit Court, the Court of Appeals and this Court.  This is the same standard of review which applies in appeals from decisions of other administrative agencies and boards.

*Childs*, 1 So. 3d at 861 (quoting *Perez*, 882 So. 2d at 220).

9

¶22. In matters involving zoning decisions by boards of supervisors, the order of the governing body will "not be set aside unless it is clearly shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991). In *Gentry v. City of Baldwyn*, our appellate courts defined the term "arbitrary" as an act that "is not done according to reason or judgment, but depending on the will alone." *Gentry v. City of Baldwyn*, 821 So. 2d 870, 873 (Miss. Ct. App. 2002) (citing *Burks v. Amite County Sch. Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998)). On the other hand, the term "'capricious' is defined as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id*. This Court has defined substantial evidence to mean "more than a mere scintilla of evidence" or "something less than a preponderance of the evidence but more than a scintilla or glimmer." *Miss. Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 280-81 (Miss. 1995) (quoting 2 Am. Jur. 2d Administrative Law § 537 *Substantial Evidence Standard* (1994)).

¶23. The burden of proof on issues of enacting or amending ordinances or rezoning rests on the party asserting the invalidity of the board's actions, while the board's actions have a presumption of validity. *Childs*, 1 So. 3d at 859. An appellate court cannot substitute its judgment for actions taken by the board. *Id*. The action of the zoning authority must not be disturbed where the issue is "fairly debatable." *Id*. "Where . . . there is substantial evidence supporting both sides of a rezoning application, it is hard to see how the ultimate decision could be anything but 'fairly debatable,' not 'arbitrary and capricious,' and therefore beyond our authority to overturn." *Edwards v. Harrison County Bd. of Supervisors*, 22 So. 3d 268,

10

274 (Miss. 2009) (quoting *Saunders v. City of Jackson*, 511 So. 2d 902, 907 (Miss. 1987)). However, "[e]very zoning case must be decided on the basis of all the circumstances of the particular case." *Id*. (quoting *Howie v. Autrey*, 209 So. 2d 904, 905 (Miss. 1968)).

### I. Whether the rezoning was arbitrary and capricious and not supported by substantial evidence.

¶24.   In order to reclassify property, an applicant must show by clear and convincing evidence that (1) a mistake in the original zoning occurred; or (2) a change in the character of the neighborhood occurred that justified rezoning, and a public need existed for the rezoning. *Edwards*, 22 So. 3d at 274. *See also Childs*, 1 So. 3d at 859-60; *Town of Florence v. Sea Lands, Ltd*., 759 So. 2d 1221, 1224 (Miss. 2000); *Old Canton Hills Homeowners Ass'n v. Mayor and City Council of City of Jackson*, 749 So. 2d 54, 62 (Miss. 1999).

¶25.   Thomas argues that the trial court erred by affirming the Board's rezoning of Aldridge's five-acre property from agricultural to industrial because no substantial evidence supported the Board's actions. He contends that Aldridge failed to show either a mistake or a change in the character of the neighborhood and a public need for rezoning.

### 1. Mistake

¶26.   On appeal, the Board reiterates an argument originally set forth by Aldridge in his brief to the circuit court, that the Board made a "mistake" by not zoning the land in question as industrial in the original zoning plan. Panola County did not raise the issue of mistake at the hearing or in any of its filings. This issue is not properly before this Court. *See Fitch v. Valentine*, 959 So. 2d 1012, 1021 (Miss. 2007). Furthermore, the Board, neither at the

11

hearing nor in its order, referenced any mistake, and the circuit court likewise did not base its decision on mistake. Therefore, the issue of mistake is not a proper basis for this rezoning case, as it is barred, and there is no showing by clear and convincing evidence that a mistake in the original zoning occurred.

## 2. Change in the character of the neighborhood

¶27. Thomas asserts that Aldridge failed to prove by clear and convincing evidence that the character of the neighborhood had changed to an extent to justify rezoning.

¶28. This Court has reversed rezoning decisions by boards of supervisors when the decision was not supported by substantial evidence. *Wright v. Mayor and Comm'rs of City of Jackson*, 421 So. 2d 1219, 1223 (Miss. 1982); *City of Oxford v. Inman*, 405 So. 2d 111, 112 (Miss. 1981); *Hughes v. Mayor and Comm'rs of City of Jackson*, 296 So. 2d 689, 691 (Mis. 1974). *See also Bd. of Aldermen, City of Clinton v. Conerly*, 509 So. 2d 877, 886 (Miss. 1987); *Cloverleaf Mall, Ltd. v. Conerly*, 387 So. 2d 736, 741 (Miss. 1980); *Lewis v. City of Jackson*, 184 So. 2d 384, 387-88 (Miss. 1966); *Cockrell v. Panola County Bd. of Supervisors*, 950 So. 2d 1086, 1095 (Miss. Ct. App. 2007).

¶29. Rezoning hearings are informal in nature. *Woodland Hills Conservation Ass'n, Inc. v. City of Jackson*, 443 So. 2d 1173, 1180 (Miss. 1983). To determine the factual issues in rezoning requests, a board may consider information provided at the rezoning hearing, its own common knowledge, and its own familiarity with the area. *Faircloth*, 592 So. 2d at 943; *see also Childs*, 1 So. 3d at 860. The rules of evidence are misplaced in rezoning matters. *Woodland Hills*, 443 So. 2d at 1180. The board also may consider any hearsay evidence that is admitted when it makes its decision. *Id*. at 943-44. "It is both proper and

12

desirable that rezoning decision makers consider information they have acquired outside the hearing room." *Id*. In *Board of Aldermen of Town of Bay Springs v. Jenkins*, 423 So. 2d 1323 (Miss. 1982), this Court stated that "[t]he hearing should be an informal, nonadversary proceeding in which the rules of evidence are not applicable" and reaffirmed that the mayor and board of aldermen were permitted to consider both sworn and unsworn statements at the hearing and their common knowledge and familiarity with the area. *Id*. (quoting R. Khayat and D. Reynolds, *Zoning Law in Mississippi*, 45 Miss. L.J. 365, 372-73 (1974)). Notwithstanding that informality is acceptable in rezoning proceedings, the governing body still must "find the necessary criteria for rezoning by clear and convincing evidence[,]" and that the evidence is contained in the record. *Bd. of Aldermen, City of Clinton v. Conerly*, 509 So. 2d at 885.

¶30.    This Court has provided some guidance to determine what constitutes substantial evidence. In *Board of Aldermen, City of Clinton*, this Court held that a governing board needs a minimum of evidence, such as a map, changes in the area, statistics demonstrating a public need, and other evidence to make an informed judgment. *Bd. of Aldermen, City of Clinton*, 509 So. 2d at 886. Subsequently, in *Sea Lands,* this Court stated that "it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning." *Sea Lands*, 759 So. 2d at 1227-28. As stated in *Sea Lands*, while there is no test to determine what constitutes sufficient evidence to prove a substantial change in the character of the neighborhood and public need, without comparable evidence, such as maps showing a change or recent rezoning in the area, statistics or other evidence of growth in the neighborhood, and charts

13

showing the quantity of construction, the record lacks comparable evidence to show a material change in the neighborhood or a public need. *Id*.; *Bd. of Aldermen, City of Clinton*, 509 So. 2d at 886.

¶31.    However, this Court also recognizes that zoning is not stagnant. "Because communities grow and changes occur, municipal officials possess the power to rezone." *Woodland Hills*, 443 So. 2d at 1180.  A good comprehensive plan "contemplates a dynamic community" and recognizes change that balances growth with individual property interests. *Id*. at 1179.  The Court has held:

> [A]ll presumptions must be indulged in favor of the validity of zoning ordinances.  It is presumed to be reasonable and for the public good.  It is presumed that the legislative body investigated it and found conditions such that the action which it took was appropriate.  The one assailing the validity has the burden of proof to establish that the ordinance is invalid or arbitrary or unreasonable as to his property, and this must be by clear and convincing evidence.

*Edwards v. Harrison County Bd. of Supervisors*, 22 So. 3d 268, 279 (Miss. 2009) (quoting *Childs*, 1 So. 3d at 861). "Again Rhyne also points out: 'Zoning is not static, and zoning restrictions are subject to change. Thus, a municipality may amend its zoning ordinance whenever it deems conditions warrant such change.'" *Edwards*, 22 So. 3d at 275 (citing *City of Jackson v. Bridges,* 243 Miss. 646, 654, 139 So. 2d 660, 663 (1962)).  Mississippi Code Section 11-1-17(1)(a) states, in part:

> The governing authority of each municipality and county may provide for the preparation, adoption, amendment, extension and carrying out of a comprehensive plan for the purpose of bringing about coordinated physical development in accordance with present and future needs. . . .

Miss. Code Ann. § 11-1-17 (1)(a) (Rev. 2002).

14

¶32. The Board's order provides little insight into its reasoning for granting rezoning. However, the order adopted the Commission's recommendation to rezone and grant a special exception with limitations. The order also recited who made presentations and who provided testimony for and against rezoning.[2] The trial court affirmed the Board's decision granting

---

[2] The Board's January 14, 2008, order stated:

On January 14, 2008, there came on for consideration by the Board of Supervisors of Panola County, Mississippi, an appeal filed by Lent E. Thomas, Jr., of a decision of the Panola County Land Development Commission dated December 10, 2007, recommending that five (5) acres be re-classified from agricultural to industrial and approving a special exception for the operation of a junk yard/salvage yard/recycling business on said five (5) acres. Attorney Larry O. Lewis presented the matter on behalf of Chris Aldridge and introduced various exhibits which are incorporated herein by reference. Chris Aldridge testified in his own behalf. Attorney Michael Graves presented matters on behalf of Lent E. Thomas, Jr., which exhibits are incorporated herein by reference. The testimony of Brenda Solomito and John Fiser was offered in opposition to re-classification and special exception. Amy Thomas testified that she objected to the proposal and presented letters to the Board which are incorporated by reference. After discussion, Supervisor Avant made a motion, which was seconded and unanimously adopted, that the five (5) acre tract described in the application belonging to Chris Aldridge in Section 23, Township 9 South, Range 8 West, be re-classified from agricultural to industrial and that the special exception be granted upon the same terms and conditions as approved by the Panola County Land Development Commission.

IT IS THEREFORE ORDERED by the Board of Supervisors of Panola County, Mississippi, that the five (5) acre tract located in Section 23, Township 9 South, Range 8 West belonging to Chris M. Aldridge be and the same is hereby re-classified from agricultural to industrial. The application for special exception filed by Chris Aldridge for the operation of a junk yard/salvage yard is hereby approved upon the same terms an (sic) limitations as set forth by the Panola County Land Development Commission Resolution dated December 10, 2007.

15

rezoning and granting a special exception to Aldridge. In determining that there was substantial evidence to permit rezoning, the trial court stated:

> The record before the Panola Land Development Commission as well as the Panola County Board of Supervisors is that there are numerous businesses along [H]ighway 6 west from Batesville. Some are industrial; some are commercial. Some are supply companies. Many are related to the retail sale of automobiles. There are lumber supply companies, schools, and private homes, farms as well as others. Therefore, there was ample evidence before the board of heavy industrial business as well as recent industrial and commercial expansions.

> This Court is of the opinion that there was ample evidence before the Board of Supervisors for a finding by the Board that there is an ongoing material change in the character of the neighborhood and the change has continued since the adoption of the Panola County Land Use Ordinance in 2002.

> The Board of Supervisors had sufficient evidence before them, as revealed by the record, to find there is a public need in Panola County for an additional company to buy and dispose of scrap metal. The Board had the right to consider the ongoing expansion of industry in Panola County and the need for private citizens as well as other commercial and industrial entities to have another outlet for scrap metal. The record reveals that there is only one other scrap metal collector in Panola County.

> The Board of Supervisors had more than sufficient evidence before it to find by clear and convincing evidence that the character of the neighborhood has substantially changed and continues to change since the adoption of the Land Use Ordinance in 2002 and there is a public need existing for rezoning to better care for the needs of the people and businesses in the area to dispose of scrap metal. *Mayor and Board of Aldermen v. Estate of Lewis*, 963 So. 2d 1210 (Miss. Ct. App. 2007).

> This Court cannot say that based upon the evidence before the Board of Supervisors that their decision is not "fairly debatable". [sic] *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987). Also *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1224 (Miss. 2000).

¶33. Thomas contends that the evidence provided by Aldridge did not demonstrate a substantial change in the character of the neighborhood. We disagree. Aldridge provided

16

various maps to the Board. The aerial map showed the location of his property in relation to other landowners. Aldridge discussed the location of current commercial and industrial businesses in relation to his facility. It is evident that the area has a mixture of agricultural, commercial, and industrial uses, despite its agricultural zoning. The Board already had granted a special exception in the area to operate a used car lot since the adoption of the ordinance. Indeed, the Board was made aware that Aldridge's property had been used for a number of years as an industrial business, a concrete plant, prior to its use as a junkyard. In addition, the Board was aware that Aldridge had been granted a special exception to operate the junkyard previously, although the circuit court had reversed that Board decision because the land was not zoned industrial at the time and in accordance with the ordinance. In other words, the Board was familiar with the land at issue and was aware that it had not been used as agricultural land for many years.

¶34. The land-use map showed the current land use for the whole county, with agricultural, residential, commercial, industrial, and flood-plain classifications. As noted above, a special exception to operate a used car lot was granted in the area since the adoption of the Panola County Land Use District Ordinance in 2002. In regard to the land use for the county, it was brought to the Board's attention that the Commission had determined that approximately ninety-nine percent of Panola County was designated as agricultural, with very limited industrial zoning. Additionally, the Board was made aware that the current zoning was problematic for all the businesses along Highway 6, including Aldridge's property, because the agricultural zoning did not coincide with the actual use of the properties.

17

¶35.   The Panola County zoning ordinance likewise provided the formal, written guide that Panola County adopted to have orderly planning and classification of its land, and it provided the procedure to rezone land and request a special exception.  The handwritten list of businesses in the county and city limits provided a reference point in connection with Aldridge's property at issue.  Aldridge's counsel stated the surrounding businesses near Aldridge's property and addressed expansions of some businesses.  The numerous photographs depicting Aldridge's facility and the surrounding area and other businesses provided a reference for determining how the facility was used and what area businesses were nearby.  The photographs also showed that many parcels of land were used for purposes other than agriculture.

¶36.   At the hearing, Aldridge's counsel referenced the growth in the area as evidenced by building and occupancy permits.  He requested that the Board consider all documents in control of Panola County demonstrating population, business, and commercial growth. Further, Aldridge listed and requested any minutes of any agency in Panola County, including the minutes of the Panola County Land Development Commission and the minutes of the Board of Supervisors, that had any connection with Aldridge's application for rezoning and special exception.  The record does contain a copy of the  Board's order granting the rezoning and special exception, a copy of Aldridge's application, deed, maps, and photographs. This Court has stated that a board may draw from its own common knowledge and its own familiarity with the area when making zoning decisions. *Faircloth*, 592 So. 2d at 943; *Childs*, 1 So. 3d at 860.

18

¶37. This Court finds that the issue of whether there was a change in the character of the neighborhood was fairly debatable. The record contained many documents, including maps, photographs, and the transcript of the January 14 Board hearing. Aldridge's land had been used for industrial purposes for many years prior to his rezoning request. Unfortunately, the January 14, 2008, order by the Board provided no insight into the basis for the Board's decision to rezone and grant a special exception. However, the Planning Commission had recommended the rezoning and the special exception and two representatives appeared before the Board at the hearing with this recommendation. The Board adopted the Commission's recommendation, including the Commission's suggested limitations. Likewise, the Board heard and considered the evidence, including expert testimony, both for and against the rezoning, and granted the rezoning requests.

### 3. Public need

¶38. During the hearing, the Board heard arguments and testimony concerning public need. Aldridge claimed that his business provided a nearby place for the public to sell batteries, aluminum cans, and old, unwanted metal objects. Further, the facility would help the environment by providing a depository for these materials instead of having them discarded in the county, where they could harm the environment. In addition, the Board heard that the facility would benefit the public. Aldridge contended that the public would have a convenient place to dispose of its materials, such as batteries, and the Board and taxpayers would not have to dispose of the materials in landfills or other locations. Further, the issue of economic development and growth was discussed in relation to the zoning ordinance.

19

¶39. On the other hand, Thomas asserted that Panola County had no need for another scrap-metal facility because one already existed in the county. The closest scrap-metal yard is approximately ten miles from Aldridge's business. Thomas mentioned a number of other scrap-metal yards that are various distances from Aldridge's business. Further, Thomas argued that Aldridge had only his personal need for the business, as evidenced by Aldridge's request to rezone no more than his five-acre parcel to help industrial development in Panola County. Thomas also asserted that he owned all the property surrounding Aldridge's property. He claimed that the junkyard would promote increased traffic, road hazards, and the like.

¶40. The trial court order stated:

> The Board of Supervisors had sufficient evidence before them, as revealed by the record, to find there is a public need in Panola County for an additional company to buy and dispose of scrap metal. The Board had the right to consider the ongoing expansion of industry in Panola County and the need for private citizens as well as other commercial and industrial entities to have another outlet for scrap metal. The record reveals that there is only one other scrap metal collector in Panola County.

¶41. This Court cannot say that the Board's decision to rezone was arbitrary and capricious, as the record showed substantial evidence of change in the character of the neighborhood and public need for the junkyard. The appellate courts are not "super-zoning commission[s]" and should not consider themselves to be zoning boards for governing bodies. *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991). "Whatever may be the personal opinion of the judges of an appeal court on zoning, the court cannot substitute its own judgment as to the wisdom or soundness of the municipality's action." *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 510 (Miss. 1989). A board may draw from

20

its own common knowledge and its own familiarity with the area when making zoning decisions. *Faircloth*, 592 So. 2d at 943; *Childs*, 1 So. 3d at 860. This Court cannot overturn a zoning decision when substantial evidence supports both sides of a rezoning application, because it would be difficult to determine that the decision was not fairly debatable. *Edwards*, 22 So. 3d at 274. The Board had evidence of the former industrial use of the property, the changes in the area, the high agricultural versus commercial or industrial ratio of county lands, the lack of industrially zoned land, and the varied uses of land in the area despite its agricultural zoning, among other things. The Board had substantial evidence before it to support its decision to rezone, and the decision was fairly debatable and cannot be disturbed on appeal.

## II. Spot-Zoning

¶42. Thomas argues that the trial court erred by affirming the board's rezoning because it constituted spot-zoning. Thomas contends that the rezoning was for no other reason than "to favor" Aldridge. The Board contends that it did not engage in spot-zoning, because it found a public need for the rezoning and, the rezoning was for the betterment of Panola County, not only Aldridge. We agree with the Board.

¶43. On the issue of spot-zoning, the trial court stated:

> The Appellant, Lent Thomas, Jr., claims that the rezoning and the special exception for the operation of a scrap metal business constitutes impermissible "spot zoning." Impermissible "spot zoning" occurs when a Board rezones a particular "spot" which is not in character with the zoning of the surrounding properties. *McKibben v. City of Jackson*[,] 193 So. 2d 741 (Miss. 1967).

> The Panola County Zoning Ordinance gives to the Land Development Commission and the Board of Supervisors the authority to make a special

21

exception for scrap metal collection or "junk yard" on property located in an industrial zone if "controlled as to number, area, location or relation to the neighborhood, would promote public health, safety welfare, morals, order, comfort, convenience, appearance, prosperity or general welfare."

This Court must review the findings of the Board of Supervisors and grant a "presumption of validity" and whether or not the issue is "fairly debatable."

Appellant Thomas claims that the special exception and the change in zoning from "agricultural" benefit only Aldridge and his company and is therefore "spot zoning" . . . .

Viewed under the above standards, the record as a whole supports the finding of the Board of Supervisors by a preponderance of the evidence. The Land Commission and the Board of Supervisors placed limitations as to time, use, no burnings, fence, all of which indicates a considered judgment rather than an "arbitrary and capricious" discriminatory, illegal act or an act not supported by substantial evidence. This court cannot overturn the Board and judicially call their action "spot zoning" . . . .

¶44.    This Court has found a distinction between spot-zoning and a zoning ordinance that has been validly amended by a governing body. *McKibben v. City of Jackson*, 193 So. 2d 741, 744 (Miss. 1967). "The term 'spot zoning' is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith." *Id*. The specific facts of each case dictate whether an amendment to the ordinance is considered void. *Id*. The caselaw consistently has invalidated zoning ordinances on the basis of spot-zoning, where the zoning ordinances "were designed 'to favor' someone." *Id. See* 1 Yokley, *Zoning Law and Practice* §§ 8-1 to 8-3 (3d ed. 1965). Recently, this Court stated "an example of an arbitrary or discriminatory zoning decision is 'spot zoning.'" *Modak-Truran v. Johnson*, 18 So. 3d 206, 209-10 (Miss. 2009). This Court has defined spot-zoning as "a small island of relatively intense use

22

surrounded by a sea of less intense use." *Id*. (quoting 2 E.C. Yokley, *Zoning Law and Practice* § 13-2 (4th ed. 2000)). However "[t]he mere fact that an area is small and is zoned at the request of a single owner and is of greater benefit to him than to others does not make out a case of spot zoning if there is a public need for it or a compelling reason for it." *Cockrell v. Panola County Bd. of Supervisors*, 950 So. 2d 1086, 1097 (Miss. Ct. App. 2007) (quoting 2 E.C. Yokley, *Zoning Law and Practice* § 13-5 (4th ed. 1978)). Likewise, this Court has stated that "[w]e are of the opinion that although a zoning ordinance or amendment creates in the center of a large zone a small area or a district devoted to a different use, it is not spot zoning if it is enacted in accordance with a comprehensive zoning plan." *Ridgewood Land Co. v. Simmons*, 243 Miss. 236, 252, 137 So. 2d 532, 538 (1962).

¶45.    In order to grant the rezoning, the Board determined that a public need existed for the rezoning. The Board's decision was considered to be "fairly debatable," and this Court will not disturb it on appeal. While Thomas's argument has a degree of merit, and the rezoning may provide Aldridge a benefit, as a rezoning logically always does to one party or another, the Board nevertheless found a public need for rezoning and, on that basis, the decision cannot be considered spot-zoning.

### III.    Special Exception

¶46.    Thomas argues that no substantial evidence supported the Board's approval of the special exception. He claims that the record contains no evidence that the special exception "would promote any of the requirements/factors as stated in the ordinance, being 'the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or

general welfare.'" Aldridge argues that the special exception had numerous restrictions and the record had substantial evidence to support the decision.

¶47.	The ordinance provides:

> Special Exception: A special exception, as used in this Ordinance, is granted by the Land Development Commission and is limited to those special exceptions specifically set forth in this Ordinance. A special exception is a use that would not be appropriate generally or without restriction throughout the Land Use district but which, if controlled as to number, area, location or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare.

Panola County, MS, Panola County Land Use District Ordinance (March 22, 2002).

¶48.	When this Court is faced with a special-exception case, the party opposing the special exception has the burden of proof to demonstrate that the board acted in an arbitrary or capricious manner. *Perez*, 882 So. 2d at 219. Special exceptions are "also sometimes referred to as conditional use permits or variances." *Perez*, 882 So. 2d at 224 (Carlson, J., specially concurring). However, when dealing with a special exception, as opposed to rezoning, the case is "adjudicative in nature while zoning ordinances are legislative acts." *Barnes*, 553 So. 2d at 510. The applicant for the special exception has "to prove by a preponderance of the evidence that they have met the elements/factors essential to obtaining" the exception. *Id*. at 511; *see also Nichols v. Madison County Bd. of Supervisors*, 953 So. 2d 1128, 1130 (Miss. Ct. App. 2006). The appellate courts are bound by a board's decision where it is based on substantial evidence. *Id*. "[T]he Board's decision must have been made in light of a 'fairly debatable' issue. We are without authority to supplant the municipality's legislative action if the decision was made in this light." *Perez*, 882 So. 2d at 220.

¶49. We find that the Board, and thus the circuit court, in affirming the Board's decision, did not err by granting the special exception. The ordinance provided a two-step process. First, a special exception may be permitted where it is "controlled as to number, area, location or relation to the neighborhood." The ordinance provided for industrial zones and contemplated and provided for the specific special exception of a junkyard within the industrial zone. The Board allowed this one junkyard in the area with the limitations that the special exception was granted only for five years before another review, restricted operation from 7:00 a.m. to 5:30 p.m. for six days a week, and permitted no burning on the premises. Second, a special exception may be permitted where, if controlled, it would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare. While Thomas argues that the record is devoid of substantial evidence, the record provides testimony as to some of these factors. Notwithstanding this, the ordinance does not require that *all* of the factors be demonstrated, as indicated by the word "or" in the factor list. The record showed that the junkyard would provide a public benefit by its convenience for residents. The junkyard provides a nearby location to dispose of unwanted materials during someone's workday. Aldridge also pointed to the public need for the facility as evidenced by the fact that his business had a successful year in operation. The Board also heard that there was an all-around public benefit. The community had a place to dispose of its used property, and the Board and taxpayers did not have to pay for its disposal in landfills. Aldridge's counsel also made the argument that having another junkyard met public safety and health standards. Specifically, the facility promoted public safety and health because it provided a place of disposal for discarded batteries otherwise left in ditches.

25

These discarded items would harm the environment and would lower property values. While all these facts were not explicitly cited under an exact factor, the Board had proof that the junkyard met the factors as listed in the ordinance. It is true that Thomas presented evidence, testimony, and hearsay that the junkyard promoted some of the negative factors by possibly increasing crime, creating an eyesore, and increasing traffic, nonetheless, the decision, at the very least, was proven by a preponderance of the evidence and was fairly debatable. Therefore, the Board's decision, and thus the circuit court's decision, is affirmed by this Court.

### IV. Constitutionality of the Ordinance

¶50. Thomas contends that the trial court erred by ruling that the ordinance was not impermissibly vague. He asserts that his due-process rights were violated because the special-exception provision contained in the ordinance was impermissibly vague and provided no parameters to guide the Board in its decision, thus making the Board's grant of the special exception arbitrary and/or capricious and/or unconstitutional.

¶51. Thomas contends that the elements or factors for a special exception should be set forth in a definite and sufficient manner in order to ensure the provision is applied equally and uniformly, or in other words, constitutionally. Thomas takes exception to the ordinance's special-exception provision, which he claims provides no guidance as to the type of evidence the Board must require to validly grant an exception and lists the "requirements" with a disjunctive "or."

¶52. A challenger of the constitutionality of a law must prove beyond a reasonable doubt that the law is unconstitutional. *Trainer v. State*, 930 So. 2d 373, 377 (Miss. 2006); *Jones*

*v. State*, 710 So. 2d 870, 877 (Miss. 1998) ("A party challenging the constitutionality of a statute must prove his case by showing the unconstitutionality of the statute beyond a reasonable doubt"); ***Burge v. Bd. of Supervisors of Pearl River County***, 213 Miss. 752, 765, 57 So. 2d 718, 722 (1952) ("the unconstitutionality of a law must appear beyond a reasonable doubt before we would be justified in striking down the same").

¶53.    This Court has analyzed a zoning ordinance, as opposed to a statute, for vagueness within the last few years.  In ***Mayor & Board of Aldermen, City of Clinton v. Welch***, 888 So. 2d 416, 420 (Miss. 2004), this Court determined whether a zoning ordinance was vague and stated:

> When a governmental entity presumes to prohibit otherwise legal activity on a citizen's private property, the constitution requires only that there be a legitimate governmental purpose.  ***City of Jackson v. McPherson***, 162 Miss. 164, 138 So. 604 (1932), citing ***Village of Euclid v. Ambler Realty Co.***, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926).  However, the restriction must be reasonably clear, enabling a citizen to understand what is allowed, and what is not.  *See generally* ***City of Chicago v. Morales***, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).

***Welch***, 888 So. 2d at 420.  An ordinance is vague "where it fails to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." ***Id***. (citations omitted); *see also* ***Richmond v. City of Corinth***, 816 So. 2d 373, 377 (Miss. 2002).

¶54.    While the special-exception provision is stated in the previous issue, it bears repeating for the sake of convenience and to better illustrate the language at issue. The ordinance provides:

> Special Exception: A special exception, as used in this Ordinance, is granted by the Land Development Commission and is limited to those special exceptions specifically set forth in this Ordinance. A special exception is a use that would not be appropriate generally or without restriction throughout the

27

Land Use district but which, if controlled as to number, area, location or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare.

Panola County, MS, Panola County Land Use District Ordinance (March 22, 2002).

¶55. First, Thomas raises no issue as to lack of due process through notice or hearing. Second, the ordinance is not so vague as to fail to provide a person of ordinary intelligence a reasonable opportunity to understand clearly what conduct is permitted and what conduct is not permitted. *Welch*, 888 So. 2d at 420. The ordinance was not vague beyond a reasonable doubt. In other words, Thomas's argument that the ordinance is vague and provides no guidance is without merit. In the preceding issue, we addressed the process set forth in the ordinance to obtain a special exception. The special exception was restricted by the Board in number, area, location, or relation to the neighborhood, and proof was provided as to the promotion of the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare.

¶56. Thomas's assertion that the trial court erroneously justified the constitutionality of the ordinance by referencing the limitations recommended by the Commission and adopted by the Board is without merit. The ordinance provided a method to grant a special exception, and the record supports the method by restricting the junkyard and providing testimony on the promotion of public health and the like. This issue is without merit.

**CONCLUSION**

¶57. For the reasons stated above, we affirm the judgment of the Circuit Court of Panola County, Second Judicial District, which affirmed the Board of Supervisors' grant to rezone

Aldridge's five-acre parcel of land from an agricultural to an industrial classification and grant of a special exception to operate a junkyard on Aldridge's property.

¶58. **AFFIRMED.**

**CARLSON AND GRAVES, P.JJ., KITCHENS AND PIERCE, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. LAMAR, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

¶59. To legally rezone real estate, a board of supervisors must find either a mistake in the original zoning or a change in the character of the neighborhood.[3] The Panola County Board of Supervisors found the latter, and the majority of this Court agrees. But the record contains no evidence of any change in the character of the neighborhood — and the majority has pointed to none — so I must dissent.

*No recent commercial expansion.*

¶60. The only evidence in the record of change in the area — as distinct from *change in the character* of the area — is that in 2002, a used-car lot opened, and at some point, an existing car dealership added a 1,000-square-foot addition to its building.

¶61. Most of the majority's discussion actually concerns the absence of change. It quotes the circuit court as follows:

> The record before the Panola Land Development Commission as well as the Panola County Board of Supervisors is that there are numerous businesses along [H]ighway 6 west from Batesville. Some are industrial; some are commercial. Some are supply companies. Many are related to the retail sale of automobiles. There are lumber supply companies, schools, and private

---

[3] ***Edwards v. Harrison County Bd. of Supervisors***, 22 So. 3d 268, 274 (Miss. 2009).

homes, farms as well as others. Therefore, there was ample evidence before the board of heavy industrial business as well as recent industrial and commercial expansions.[4]

¶62. The reference to "recent industrial and commercial expansions" is justified (as far as the record is concerned) by no more than the addition of one car dealership and a modest increase in the size of another. The rest of the commercial activity described by the circuit court had existed, unchanged, for quite some time.

*No change in the neighborhood's character.*

¶63. The majority cites as evidence for change in the neighborhood's character the following:

> Aldridge provided various maps to the Board. The aerial map showed the location of his property in relation to other landowners. Aldridge discussed the location of current commercial and industrial businesses in relation to his facility. It is evident that the area has a mixture of agricultural, commercial, and industrial uses despite its agricultural zoning. The Board already had granted a special exception in the area to operate a used car lot since the adoption of the ordinance. Indeed, the Board was made aware that Aldridge's property had been used for a number of years as an industrial business, a concrete plant, prior to its use as a junkyard. . . . In other words, the Board was familiar with the land at issue and was aware that it had not been used as agricultural land for many years.[5]

¶64. As with the circuit court's findings, I see no evidence of change in character and, indeed, very little of change at all. The first four sentences of the above passage merely describe the status quo at the time of the hearing. The next sentence mentions one of the car dealers. The last two support my concern: the property's use had not changed for "a number of years." "It had not been used as agricultural land for many years." Perhaps that last

---

[4] Maj. Op. at ¶ 32.

[5] Maj. Op. at ¶ 33.

sentence shows that the zoning was wrong in the first instance, but that misses the point entirely. This case, the majority correctly holds, does not implicate the mistake clause of the *Edwards* opinion.[6] The only question before us concerns whether the character of the neighborhood has changed. Based on evidence in the record, it has not.

¶65. The majority writes that "[a]t the hearing, Aldridge's counsel referenced the growth in the area as evidenced by building and occupancy permits."[7] The record contains no data on how much growth — or how little — had occurred, or of what type. Growth does not necessarily (although it can) cause a neighborhood's character to change. For instance, the expansion and growth of a small neighborhood into a large neighborhood would not per se indicate a change in character. Here, we have no evidence of the magnitude or the nature of the alleged growth. So we cannot say that it caused a change in character.

¶66. The majority may be correct that "the current zoning was problematic for all the businesses along Highway 6, including Aldridge's property because the agricultural zoning did not coincide with the actual use of the properties."[8] But while this perhaps could have been grounds for rezoning because of mistake, it provides no evidence of a change in the character of the area.

¶67. The record evidence supporting the Board's decision to rezone does not rise even to the level of a scintilla. Under *Edwards*, the rezoning was illegal and we should reverse and render. Therefore, I dissent.

---

[6] Maj. Op. at ¶ 26.

[7] Maj. Op. at ¶ 36.

[8] Maj. Op. at ¶ 34.

**WALLER, C.J., JOINS THIS OPINION**.