IRVING, P.J.,
for the Court:
¶ 1. On April 15, 2008, the Tupelo City Council voted to rezone forty-five acres of land from Rl-L (large-lot residential) to PUD (Planned Unit Development). Thomas J. Gardner III owns property adjacent to the property rezoned by the City Council and opposes the rezoning. On April 24, 2008, Gardner filed a bill of exceptions challenging the City Council’s decision to rezone the property. The Lee County Circuit Court affirmed the City Council’s decision. Feeling aggrieved, Gardner appeals and asserts that the circuit court erred in affirming the rezoning of the property because there was insufficient evidence of a change in the neighborhood’s character or a public need.
¶ 2. Because there was not clear and convincing evidence of a change in the neighborhood’s character or a public need, the City Council erred in rezoning the property. Likewise, the circuit court erred in affirming the City Council’s decision. Therefore, we reverse and render the decision of the City Council rezoning the forty-five-acre tract, and the judgment of the circuit court affirming the decision.
FACTS
¶ 3. On January 1, 2007, Wilson Coleman filed a “Request for Rezoning” with the City of Tupelo’s Department of Planning and Community Development (Planning Department). Coleman sought to have forty-five acres of his property rezoned from large-lot residential to PUD. Coleman intended to develop a residential neighborhood, consisting of single-family homes and a retirement community, on the property.
¶ 4. The Planning Department reviewed the request and issued a report recommending that Coleman’s request for rezoning be approved. On April 15, 2008, the City Council held a public hearing regarding the rezoning request. Gardner appeared at the hearing and opposed the rezoning. However, the City Council voted to approve Coleman’s request to rezone the forty-five acres from large-lot residential to PUD.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. A city council’s decision regarding zoning will “not be set aside unless it is clearly shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis.” Thomas v. Bd. of Supervisors, 45 So.3d 1173, 1180 (¶ 22) (Miss.2010) (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). Furthermore, “[t]he action of the zoning authority must not be disturbed where the issue is ‘fairly debatable.’ ” Id. at 1181 (¶ 23) (quoting Childs v. *207 Hancock County Bd. of Supervisors, 1 So.3d 855, 859 (¶ 12) (Miss.2009)). An issue is “fairly debatable” where “there is substantial evidence supporting both sides of a rezoning application....” Id. (quoting Edwards v. Harrison County Bd. of Supervisors, 22 So.3d 268, 274 (¶ 18) (Miss.2009)).
¶ 7. Gardner argues that the circuit court erred in affirming the City Council’s decision to rezone the property from large-lot residential to PUD. Specifically, Gardner asserts that there is insufficient evidence that the character of the neighborhood has changed or that public need calls for rezoning. Before a zoning board may reclassify property from one zone to another, there must be proof that “(1) a mistake in the original zoning occurred; or (2) a change in the character of the neighborhood occurred that justified rezoning, and a public need existed for the rezoning.” Thomas, 45 So.3d at 1181 (¶ 24). The applicant seeking rezoning must prove the existence of either the first or second prong, set out above, by clear and convincing evidence. Id.
¶ 8. At the outset, we note that the City of Tupelo contends that the City Council’s decision to approve Coleman’s request for a PUD does not constitute rezoning, and, therefore, its decision should not be evaluated under the “change or mistake” rule discussed above. The City asserts that PUDs do not eliminate the existing zoning ordinances; instead, PUDs supplement the ordinances with “additional regulations and development restrictions.” However, the City cites no Mississippi case law in support of its argument, and we are aware of none.[1] In fact, the Mississippi Supreme Court has consistently categorized PUD designations as rezoning and has evaluated such designations using the “change or mistake” rule. See Fondren N. Renaissance v. City of Jackson, 749 So.2d 974 (Miss.1999); Old Canton Hills Homeowners Ass’n v. City of Jackson, 749 So.2d 54 (Miss.1999). This issue is without merit.
 ¶ 9. The City does not claim error in the original zoning; therefore, this Court’s analysis will focus on whether there was sufficient evidence that the character of the neighborhood had changed and that rezoning satisfied a public need. There is no bright-line rule as to what constitutes sufficient evidence of change in a neighborhood’s character or public need. Thomas, 45 So.3d at 1182 (¶ 30). Howev *208 er, there must be enough evidence for the zoning board to reach an informed decision.[2] Id.
¶ 10. The City argues that the rezoning is justified based on the changing character of the area. Specifically, the City points out that Toyota plans to build a plant near the rezoned property and that a private school had recently been built in the area. However, the record contains no evidence as to how either the Toyota plant, which will be located seven miles from the property, or the school has changed the character of the neighborhood. Furthermore, this Court has held that the potential for future development does not constitute evidence of a change in a neighborhood’s character. Cockrell v. Panola County Bd. of Supervisors, 950 So.2d 1086, 1095 (¶ 20) (Miss.Ct.App.2007).
¶ 11. In Cockrell, Sheryll and Linda Martin sought to rezone their property from agricultural to industrial and to relocate their scrap-metal business to the rezoned property. Id. at 1088 (¶2). J.M. and Lisa Cockrell owned 105 acres adjacent to the Martins’ proposed location for their scrap-metal business and had begun construction on a $1,000,000 home. Id. The Panola County Board of Supervisors approved the rezoning request over the Cockrells’ objection. Id. at (¶ 1). The Board concluded that the character of the neighborhood had changed because a culvert-manufacturing business, located adjacent to the Martins’ property, had recently expanded its operations, and a manufacturer of storage buildings had opened a warehouse half a mile from the Martins’ property. Id. at 1092-93 (¶ 15). Additionally, the county’s industrial development authority sought to develop and market property near the Martins’ property as a “major industrial site,” and the Board believed that the rezoning would aid such efforts. Id. at 1093 (¶ 15).
¶ 12. This Court held that the Martins had not presented clear and convincing evidence that the character of the neighborhood had changed. Id. at (¶ 16). The Court noted that there was no concrete evidence of the culvert manufacturer’s expansion such as evidence of increased traffic near the facility, increased production at the facility, or increased hiring of employees for the facility. Id. Instead, the Martins’ attorney offered only “vague references” that the facility was expanding. Id. at 1094 (¶ 17). Additionally, this Court rejected the Board’s argument that the character of the neighborhood had changed based on the storage-building business, which was located half a mile away from the Martins’ property. Id. at (¶ 19). Finally, this Court rejected the Board’s argument that rezoning the Martins’ property would improve the area’s potential for “future industrial development.” Id. at 1095 (¶ 20).
¶ 13. In this case, the City’s rationale for its decision to rezone the property is based on speculative future changes in the neighborhood’s character. However, in Cockrell, this Court rejected the notion that future potential development constitutes a substantial change in the character of a neighborhood warranting rezoning. Id. The City argues that the character of the neighborhood has changed because a *209 Toyota plant will be built seven miles from the property and because a school has been built near the property. This Court concluded in Cockrell that the existence of a business one-half mile away from the rezoned property did not constitute a change in the neighborhood’s character, and we see no basis for holding differently in this case where the business is located seven miles from the rezoned property. Additionally, like Cockrell, there is no quantification of how the Toyota plant will impact the rezoned property. Instead, Coleman merely alluded to anticipated future growth in the area following the plant’s completion. Likewise, there was no evidence as to how the recently built private school had changed the neighborhood.
¶ 14. Finally, we note that the report issued by the City’s Planning Department describes the area as “rural in character with hayfields, pastures, and large[-]house lots.” Also, in the report’s analysis of whether the changes in the neighborhood warranted the rezoning, the Planning Department concluded that such changes were “not applicable.” Based on the report’s description of the area, we can only interpret this to mean that such changes did not exist.
¶ 15. The record before this Court simply does not support a change in the neighborhood’s character that warrants rezoning. Insufficient proof of such a change leads this Court to conclude that the City Council’s decision was arbitrary and capricious. Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1227 (¶ 23) (Miss.2000).
¶ 16. While an inquiry into public need is unnecessary given our holding that Coleman failed to present the City Council with clear and convincing evidence of a change in the neighborhood’s character, we pause briefly to note that even the evidence presented to the City Council regarding public need was insufficient to justify rezoning. At the April 15, 2008 hearing, the City Council heard testimony that the proposed residential development would assist in attracting retirees to Tupe-lo, which promotes itself as a certified retirement community. However, there was no evidence of an existing public need for a new retirement community. The City Council also heard testimony that demographic trends indicate that people prefer living in higher-density neighborhoods, like Coleman’s proposed development. However, there was no presentation of empirical data supporting the existence of such trends. The only concrete evidence presented to the City Council regarding public need consisted of testimony from Pat Falkner, the city planner. Falkner opined that based on projected population growth, future housing needs would require the construction of approximately 450 houses each year and that currently only 120 to 130 houses are being built annually. However, Falkner provided no estimate of when the City’s increased housing needs would occur.
¶ 17. Based on our review of the record, we are unable to find any evidence upon which the City Council could rely upon to justify rezoning the property. Without a change in the neighborhood’s character or an existing public need, this Court must conclude that the City Council’s decision was arbitrary and capricious. Accordingly, we reverse and render the decision of the City Council rezoning the forty-five-acre tract, and the judgment of the circuit affirming the decision.
¶ 18. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
*210 LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS AND BARNES, JJ., NOT PARTICIPATING.

. The City cites several cases from foreign jurisdictions, which explain that the overarching purpose of PUDs is to provide zoning boards with greater flexibility in zoning decisions than that which is available through traditional zoning. See Tri-State Generation & Transmission Co. v. City of Thornton, 647 P.2d 670 (Colo.1982); Levitt Homes, Inc. v. Old Farm Homeowner’s Ass'n, 111 Ill.App.3d 300, 67 Ill.Dec. 155, 444 N.E.2d 194, 202 (1982). However, as the Colorado Supreme Court noted in Tri-State, "the same flexibility which is the primary virtue of a PUD ordinance also results in a loss of certainty and a concomitant concern with the misuse or abuse of discretionary authority.” Tri-State, 647 P.2d at 678. Accordingly, the Colorado Supreme Court explained that "courts have generally required that standards be incorporated into a planned development ordinance in order to protect against arbitrary state action. ..." Id. The court further noted that the Thornton PUD ordinance required the city’s planning commission to consider the following criteria: (1) "[c]ompatibility with the surrounding area,” (2) "[hjarmony with the character of the neighborhood,” and (3) "[n]eed for the proposed development.” Id. Notably, these criteria are nearly identical to those found in the "change or mistake” rule. Furthermore, the standards that the Colorado Supreme Court reasoned would prevent arbitrary state action, are not found in Tupelo’s PUD ordinance. Tupelo Dev.Code § 5.5.5(2)(a)-(m). Tupelo's ordinance requires only "[a] description of the relationship of the planned unit development to the surrounding land uses...." Id. at (f).

. While there is no test to determine what constitutes sufficient evidence of a change in a neighborhood’s character or a public need, our supreme court has provided some guidance stating that, at a minimum, a zoning board should consider evidence such as "maps showing a change [in a neighborhood’s character] or recent rezoning in the area, statistics or other evidence of growth in the neighborhood, and charts showing the quantity of construction [in the area],” or other comparable evidence. Thomas, 45 So.3d at 1182-83 (¶ 30).