IRVING, P.J.,
for the Court:
¶ 1. Leo Lucas Laurent Jr. appeals his conviction in the Hancock County Circuit Court of the murder of his wife, Brandi Laurent, that resulted in a life sentence in the custody of the Mississippi Department of Corrections. On appeal, Laurent argues that: (1) the circuit court’s refusal to give a self-defense jury instruction warrants a new trial; (2) he was entitled to a directed verdict of acquittal under the Weathersby[1] rule; and (3) the circuit court erred in denying his motion for a new trial.
¶ 2. Finding no error, we affirm.
FACTS
¶ 8. Brandi disappeared from the home that she shared with Laurent in August 2007. After Laurent reported Brandi missing, the Hancock County Sheriffs Department and the Mississippi Bureau of Investigations began an investigation of the case.
¶ 4. Laurent gave three different statements to investigators concerning what had happened to Brandi. Initially, he told investigators that Brandi had left their home after arguing with him about not wanting to go out and “party.” He told investigators that Brandi had left on foot, but he suspected that Brandi, a drug user, was with á local drug dealer.
¶ 5. On January 7, 2008, Laurent gave two additional statements to investigators concerning what had happened to Brandi. In the first statement, Laurent insisted that Brandi had died of a drug overdose. Laurent stated that the couple had argued on the day of Brandi’s disappearance. According to Laurent, Brandi went into the bedroom after the argument, came out of the bedroom with blood running from her nose and mouth, and collapsed to the floor. Laurent said that he panicked and decided to hide Brandi’s body. He then put Brandi’s body into a trash can, loaded the can into his van, drove to the woods near their home, and buried her. After being pressed by investigators, Laurent changed his story and stated that he had accidentally shot Brandi while trying to defend himself. Laurent explained that Brandi had been sitting on their bed holding a .38-caliber semi-automatic pistol. According to Laurent, Brandi cocked the gun and moved toward him. He and Brandi struggled for possession of the gun, which accidentally discharged during the struggle and killed her. The rest of Laurent’s *1234 statement, concerning his disposal of Brandi’s body, remained unchanged.
¶ 6. Dr. Paul McGarry performed an autopsy of Brandi’s remains. He testified that although parts of Brandi’s body were missing, the sole cause of Brandi’s death, within a reasonable degree of medical and scientific certainty, was asphyxia due to compressive injuries of the neck and chest. Furthermore, during cross-examination, when questioned about injuries to Brandi’s chest area, Dr. McGarry testified that he found no evidence of a gunshot wound.
¶ 7. At trial, Laurent requested a self-defense jury instruction. The circuit court refused his proffered jury instruction.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Self-defense Instruction

¶ 9. Laurent argues that the circuit court erred by not giving a self-defense jury instruction. “[T]he standard of review for the denial of jury instructions is abuse of discretion.” Newell v. State, 49 So.3d 66, 73 (¶ 20) (Miss.2010) (citing Davis v. State, 18 So.3d 842, 847 (¶ 15) (Miss.2009)). The Mississippi Supreme Court has held that a defendant is entitled to jury instructions that present his theory of the case even if the supporting evidence is “weak, inconsistent, or of doubtful credibility.” Banyard v. State, 47 So.3d 676, 681 (¶ 12) (Miss.2010) (quoting Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000)). Moreover, the defendant is entitled to his jury instruction even when the only evidence supporting the defendant’s theory of the case arises in the defendant’s own testimony. Id. at 681 (¶ 11). However, “ ‘the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.’ ” Id. (quoting Young v. Guild, 7 So.3d 251, 259 (¶ 23) (Miss.2009)).
¶ 10. Laurent relies on Brown v. State, 39 So.3d 890 (Miss.2010) in support of his argument that the circuit court erred by not giving a self-defense instruction to the jury. However, Laurent’s reliance on Brown is misplaced.
¶ 11. In Brown, Johnny Brown was convicted of murdering Violar Bracey. Id. at 891, 894 (¶¶ 2, 17). At trial, Brown testified to a series of actions tending to indicate that the shooting of Bracey was accidental. He stated that he and Bracey had made love and that he was lying in bed with his back to Bracey. Id. at 895 (¶ 22). He then gave the following specific testimony as to how the shooting occurred:
She was talking to me, she was asking me was I going to be with her or what, you know, and I was like I wasn’t really just hearing what she was saying[,] so she pushed me in the back of the head. And when she pushed me in the back of the head, I seen [sic] the gun. I started laughing ‘cause I was looking at it like it was funny, you know. I’m like, know what I’m saying, and she’s like you going to be with me or you going to be with that “B” you know, ‘cause if I can’t have you[,] can’t nobody have you.
I went to rubbing on her arm[,] and I grabbed her arm[,] and I come across her, you know, I come on top of her. I put her arm over her head. I made her drop the gun[,] and when she dropped the gun[,] I grabbed the gun[,] but I didn’t grab the handle of the gun. I had the part that turns or whatever. I was coming up with the gun, know what I’m saying[,] and she grabbed my arm. When she grabbed my arm[,] I snatched back from her[,] and the gun went off.
Id. at 895-96 (¶ 22). At the conclusion of the evidence, Brown requested that the circuit court give an accidental-shooting *1235 instruction. Id. at 896 (¶¶ 23-24). The circuit court denied his request. Brown appealed to the Mississippi Supreme Court, which reversed and remanded. The court found that “Brown’s ‘alternative theory1 of defense, if not his main theory, that he accidentally had shot Bracey ‘in the heat of passion’ and ‘upon sudden and sufficient provocation,’ was supported by the evidence to the extent that the trial judge should have given the jury an accidental-shooting instruction.” Id. at 897, 900 (¶¶ 25, 36).
¶ 12. In this case, Laurent asserts that he was entitled to a self-defense instruction because he had accidentally shot Brandi as they struggled over the gun that Brandi was brandishing as she moved toward him. However, Dr. McGarry concluded that Brandi died of asphyxia due to compressive injuries of the neck and chest, not from a gunshot injury.
¶ 13. While a defendant is entitled to jury instructions that support his theory of the case, even where that theory is based solely on the defendant’s own testimony, an evidentiary basis must still exist for the jury instruction. Here, Laurent, who did not testify, contends that he was entitled to a self-defense instruction based on his statement to police that Brandi moved toward him with a loaded gun and that as he struggled to take the gun from her, the gun accidentally fired and killed her. The problem with Laurent’s argument is that the medical evidence is that Brandi did not die as a result of having been shot. Laurent introduced no medical evidence to the contrary, and although he testified that Brandi collapsed after being shot, he is not competent to assess the cause of Brandi’s death. As stated, Dr. McGarry testified to a reasonable degree of medical and scientific certainty that Brandi died from asphyxia due to compressive injuries of the neck and chest.[2] Dr. McGarry further testified that he found no other injuries, including evidence of a gunshot wound, that could have caused Brandi’s death. Moreover, Laurent did not say in any of his statements to the police that Brandi’s neck and chest were compressed during the struggle to wrest the gun from her. Therefore, the record is devoid of an evidentiary basis for granting a self-defense instruction. The absence of an evidentiary basis for a self-defense instruction distinguishes this case from Brown. In Brown, it was not disputed that Bracey died of a gunshot injury. The only question was how the gunshot injury occurred. Because there is not a sufficient evidentiary basis to support a self-defense jury instruction in this case, the circuit court did not err by refusing to grant the instruction. This issue is without merit.

2. Application of the Weathersby Rule

¶ 14. Laurent also asserts that he was entitled to a directed verdict of acquittal based on the principle set forth in Weathersby. However, Laurent did not argue the Weathersby rule before the circuit court as a ground for a directed verdict. As such, he is procedurally barred from arguing this issue on appeal. Gunn v. State, 56 So.3d 568, 572 (¶ 17) (Miss.2011).
¶ 15. Procedural bar notwithstanding, we hold that the Weathersby rule is inapplicable to the facts of this case. In Weathersby, our supreme court explained that:
*1236 [Wjhere the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [SJtate, or by the physical facts or by the facts of common knowledge.
Weathersby, 165 Miss, at 209, 147 So. at 482. The supreme court has also held that when a defendant gives conflicting versions regarding how the crime occurred or initially denies his involvement in the crime, the Weathersby rule is inapplicable. Jones v. State, 39 So.3d 860, 863-64 (¶ 22) (Miss.2010).
¶ 16. While Laurent may have been the only witness to the crime, his version of the incident was “substantially contradicted in material particulars” by a witness for the State. Laurent insisted that Brandi had been shot. However, Dr. McGarry testified that Brandi died from asphyxia due to compressive injuries of the neck and chest. Furthermore, Dr. McGar-ry testified that he did not find any evidence of any other type of injury that could have caused Brandi’s death. Because Laurent’s version of how Brandi died was substantially contradicted by Dr. McGarry’s testimony and the autopsy evidence, the Weathersby rule does not apply. Moreover, considering that Laurent gave three different statements to investigators and denied his involvement in Brandi’s death in two of those statements, the Weathersby rule would be inapplicable even if Laurent’s version of the incident had not been substantially contradicted by the medical evidence. Thus, this contention of error is without merit.

3. Weight of the Evidence

¶ 17. Laurent further argues that his murder conviction is contrary to the weight of the evidence. An appellate court will not disturb a jury verdict unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). Additionally, an appellate court views the evidence in the light most favorable to the verdict. Id.
¶ 18. At trial, the jury heard testimony from investigators who testified to statements given to them by Laurent, insisting that Brandi had died from an accidental gunshot injury. Dr. McGarry testified that Brandi died from asphyxiation. He further testified that while parts of Brandi’s body had been destroyed by animals and exposure to the elements, he was certain that there were no other injuries that could have caused Brandi’s death. Additionally, Dr. McGarry testified that the injuries that he observed during the autopsy occurred while Brandi was alive and were not, as Laurent suggested during the cross-examination of Dr. McGarry, caused by animals after Brandi had been killed. Ultimately, the jury judges the credibility of the witnesses and determines how much weight to accord their testimonies. Osborne v. State, 54 So.3d 841, 846 (¶ 21) (Miss.2011). The jury simply did not accept Laurent’s account of how Brandi died. We cannot say that allowing the jury’s verdict to stand would sanction an unconscionable injustice. Therefore, the circuit court did not err in denying Laurent’s motion for a new trial. This issue is without merit.
¶ 19. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS *1237 APPEAL ARE ASSESSED TO HANCOCK COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.

. Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).

. Although it is unclear from Dr. McGarry’s testimony if he was able to examine the area of Brandi’s body where Laurent insists that Brandi was shot, Laurent did not challenge Dr. McGariy’s testimony nor did he challenge Dr. McGarry’s findings related to Brandi's cause of death.