BARNES, J.,
for the Court:
¶ 1. Thomas Earl Ellis was convicted of sexual battery and gratification of lust in the Circuit Court of Hinds County. He was sentenced to thirty years for sexual battery and fifteen years for gratification of lust, as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007), with the sentences to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC). On appeal, we find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2008, Ellis was married to Carla, and the couple lived with Carla’s two children, eight-year-old Tiffany and her brother, in Jackson, Mississippi.[1] Although Tiffany told her mother that Ellis had been entering her bedroom and penetrating her vagina with his finger, Carla felt that more evidence was needed in order to take any action. One evening while Tiffany was lying on a mattress by the couple’s bed, Carla finally observed Ellis reaching over her and putting his hand near Tiffany’s pelvic area. As a result, Carla and the children left Ellis and went to a shelter. Tiffany was subsequently placed in a foster home.
¶ 3. Tiffany was interviewed by Rachel Daniels, the program director of the Mississippi Children’s Advocacy Center (CAC). Also present at the CAC interview was LaTasha Holmes, a child-protection investigator with the Hinds County Sheriffs Department. Tiffany later authenticated the videotape of the CAC interview at trial. Dr. Scott Benton, director of CAC and an associate professor of pediatrics at the University of Mississippi Medical Center, examined Tiffany, but found no physical evidence to support the allegation of sexual abuse. Kimberly Smith, with the Mississippi Children’s Home Services, testified that she had provided therapy to Tiffany, who told her that she (Tiffany) had been sexually abused by Ellis.
¶ 4. There was also testimony at trial by two witnesses who had been sexually abused by Ellis.[2] The jury was read prior testimony by Ellis’s nephew, Charles Edwards, that Ellis had kissed him when he was nine. Charles also said that Ellis came to his bed and tried to rub on his penis. Another witness, twenty-eight-year-old Sandra Carter, testified at trial that when she was seven years old, Ellis came into her room on several occasions and penetrated her with his finger. Ellis had been married to her mother. The trial court gave a cautionary instruction to the jury regarding these witnesses’ testimony, noting that it was offered only for the purpose of showing motive, intent, absence of mistake, and opportunity.
¶ 5. On March 31, 2011, Ellis was convicted of sexual battery and gratification of lust and sentenced as a habitual offender to thirty years and fifteen years, respectively, in the custody of the MDOC, with the sentences to be served consecutively. Ellis now appeals, raising three issues:
I. Whether Ellis’s right to a speedy trial was violated.
II. Whether the victim’s recorded out-of-court interview was improperly published to the jury without being admitted into evidence.
III. Whether the State’s solicitation of an improper comment on the de *418 fendant’s post -Miranda silence was reversible error.
Finding no error, we affirm the judgment of conviction and sentences.
DISCUSSION
I. Whether Ellis’s right to a speedy trial was violated.
¶ 6. Ellis was taken into custody on December 30, 2008. The grand jury indicted Ellis on May 29, 2009, and he was arraigned and appointed counsel on July 13, 2009. Ellis filed a pro se motion for a speedy trial on July 23, 2009. He subsequently filed a pro se motion to dismiss for failure to provide a speedy trial on April 20, 2010. Ellis filed four more pro se motions for a speedy trial: June 21, 2010; July 19, 2010; September 2, 2010; and January 20, 2011. There is no indication that the question of a speedy trial was ever addressed by the trial court.
¶ 7. The right to a speedy trial is a constitutional right under the Sixth Amendment to the United States Constitution and the Mississippi Constitution, Article 3, Section 26. “[T]he constitutional right to a speedy trial attaches at the time the individual is accused.” Mason v. State, 42 So.3d 629, 634 (¶ 18) (Miss.Ct.App.2010) (citing Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005)). Additionally, a statutory right to a speedy trial exists under Mississippi Code Annotated section 99-17-1 (Rev.2007), which requires “that an accused be brought to trial within 270 days of arraignment unless there is a showing of “good cause.” ” Lipsey v. State, 50 So.3d 341, 352 (¶ 35) (Miss.Ct.App.2010).
¶ 8. When a defendant’s constitutional right to a speedy trial is questioned, the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable. Those factors to be considered are: “(1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to speedy trial, and (4) whether the defendant was prejudiced by the delay.” Noe v. State, 616 So.2d 298, 300 (Miss.1993) (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). “The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.” Barker, 407 U.S. at 530, 92 S.Ct. 2182 (emphasis added). “[A]ny delay of eight (8) months or longer is presumptively prejudicial.” Noe, 616 So.2d at 300 (quoting Smith v. State, 550 So.2d 406, 408 (Miss.1989)).
¶ 9. In Dora v. State, 986 So.2d 917, 924-25 (¶¶ 15-20) (Miss.2008), the Mississippi Supreme Court found a defendant’s failure to raise the issue of speedy trial with the trial court had waived the issue on appeal. Similarly, while Ellis filed numerous motions regarding his right to a speedy trial, neither he nor his attorney ever set them for a hearing or requested a ruling on the motions. A defendant has a duty to seek a ruling on a motion demanding a speedy trial. Craft v. State, 832 So.2d 467, 471 (¶ 10) (Miss.2002); see also Reed v. State, 31 So.3d 48, 57 (¶ 36) (Miss.Ct.App.2009) (Motions are not self-executing; it is the defendant’s responsibility to seek a ruling.). Therefore, we find Ellis is procedurally barred on direct appeal from raising the issue of whether his right to a speedy trial was violated.[3]
*419 ¶ 10. Although Ellis’s claim is barred on direct appeal, we dismiss his claim without prejudice, preserving his ability to raise the issue in a motion for post-conviction relief in association with a claim of ineffective assistance of counsel for failure to request a hearing on the motions.
II. Whether the trial court committed error by allowing the jury to view the victim’s out-of-court recorded interview without entering the tape into evidence, resulting in prejudice to Ellis.
¶ 11. The jury was allowed to view the video recording of the CAC interview with the victim, Tiffany, but the trial court did not allow the tape to be taken into the jury room during deliberations. Ellis argues that exclusion of the tape from the jury room meant that the trial judge decided that the tape was inadmissible as evidence; thus, the viewing of the tape constituted reversible error.
¶ 12. The State had requested that the tape of the CAC interview be entered for identification purposes through the testimony of Daniels, the CAC program director, and then later entered into evidence through Tiffany’s testimony. Any inadmissible information had been redacted from the tape. The trial court said that was “fine,” noting: Although defense counsel argued that the tape was “duplicative” since the tape participants were going to testify, the trial judge ruled that he would allow the tape to be played for the jury, stating: “I’m going to allow him to use it.... [I]t gives the jury some idea of what [Tiffany] was like at the time of her disclosure. So, I’ll allow it to come in at that point.”
If you want to go through the tape with [Tiffany], that’s fine.... But what the jury is going to look for is her testimony before them this morning. But I will agree that you have a right to show them her state at the time that she made the disclosure.
¶ 13. Yet when Tiffany began her testimony, the trial court determined that although the recorded interview could be played for the jury, the tape was not to be taken back to the jury room.
[THE STATE:] Judge, at this time, ... what’s previously offered into evidence as — not offered into evidence. It was offered for identification purposes, the videotaped interview of the CAC center with [Tiffany] and [Daniels]. We’d ask to now have it into evidence and be permitted to publish it to the jury through the television set.
THE COURT: I’ll allow you to publish it, but it will remain for ID purposes. I’ll allow you to show it, but it will not go back into the jury room. They’ll have to remember as best they can, but I will allow you to show it.
Ellis claims that this exchange demonstrates that the trial judge ruled the tape was inadmissible; therefore, to allow the jury to view the tape was reversible error.[4] Ellis further argues: “It cannot be said that the jury’s verdict here was made without considering the videotape.” The State argues that the later ruling of the trial court was “merely a misstatement” and *420 that the judge had already ruled the recording was admissible.
¶ 14. Based on a review of the record, we find no merit to Ellis’s claim that the trial court “concluded that the video was inadmissable as evidence and did not admit it as such.” The trial court allowed the jury to view the video as evidence, similar to live testimony by witnesses; it just prohibited this particular evidence from being taken into the jury room for deliberations. We find this action proper; the jury would also have no record of the testimony of other witnesses. Rule 8.10 of the Uniform Rules of Circuit and County Court states: “The court shall permit the jury, upon retiring for deliberation, to take to the jury room the instructions and exhibits and writings which have been received in evidence, except depositions.” (Emphasis added). While the recording in this instance was not deposition testimony, it was similar in nature, containing prior statements made by the victim in an interview. Furthermore, Ellis suffered no prejudice as a result of the trial court’s decision not to allow this evidence into the jury room. There was also sufficient evidence to support the jury’s verdict apart from the videotape.
¶ 15. Accordingly, we find that the trial court had ruled that the taped interview was admissible as evidence, and this issue is without merit.
III. Whether the State’s solicitation of an improper comment on the defendant’s post -Miranda silence was reversible error.
¶ 16. During the prosecution’s questioning of Holmes, the Hinds County investigator, at trial, the following occurred:
Q. And have you had the opportunity to contact a Thomas Ellis regarding any allegations of abuse?
A. Thomas Ellis was arrested December the 30th, 2008. And I brought him up to speak with him, and he declined to make a statement.
No objection to this testimony was raised, and there was no request for a mistrial.
¶ 17. Quoting Quick v. State, 569 So.2d 1197, 1199 (Miss.1990), Ellis argues that “[i]t is improper and, ordinarily, reversible error to comment on an accused’s post-Miranda [5] silence.” “The accused’s right to be silent then is equally as strong as the right not to testify and it is error to comment on either.” Id. The State admits that the “challenged testimony ... [is] legally improper.”
¶ 18. “If a question arises as to the prosecution’s comment on the defendant’s failure to testify, each case must be considered on an individual basis on the facts of that particular case.” Crutcher v. State, 68 So.3d 724, 728 (¶ 6) (Miss.Ct.App. 2011) (citing Da La Beckwith v. State, 707 So.2d 547, 584 (¶148) (Miss.1997)). If such an error does occur, the witness’s comment “is deemed harmless beyond a reasonable doubt where the evidence of guilt is ‘so overwhelming that the jury would have returned a guilty verdict in spite of the prosecutor’s comment.’ ” Id. (quoting De La Beckwith, 707 So.2d at 584 (¶ 148)).
¶ 19. In Gossett v. State, 660 So.2d 1285, 1291 (Miss.1995), the solicitation of an improper comment regarding a defendant’s refusal to make a statement was not found to be reversible error, as the witness was interrupted before actually making the improper comment. There was also overwhelming evidence of guilt, so even if the witness was able to answer, it would *421 have been harmless error. In Gunn v. State, 56 So.3d 568, 572 (¶ 16) (Miss.2011), the supreme court found that although the prosecution improperly solicited a comment regarding the defendant’s silence following his arrest, it was harmless error, as “the evidence weighted] overwhelmingly against the defendant.” Additionally, the comment was not used to impeach the defendant’s testimony and not revisited in closing arguments. Id.
¶ 20. Miost recently, in Smith v. State, 90 So.3d 122 (Miss.Ct.App.2012), this Court considered circumstances similar to the present case. The State asked a witness, an investigator, if he had “any contact with the suspect.” Id. at 126 (¶ 8). The officer replied that the suspect was advised of his Miranda rights and “refused to give [the officer] a statement.” Id. Defense counsel objected, but did not move for a mistrial; therefore, we held that Smith “failed to preserve this issue for appeal.” Id. at (¶ 9). We further addressed the merits and found that the prosecution’s question was not an intentional solicitation of the improper comment and did not warrant reversal. Id. at 127 (¶ 13).
¶ 21. In the present case, defense counsel did not make a contemporaneous objection to the testimony by Holmes; nor did counsel move for a mistrial. Thus, any claim regarding the improper comment is procedurally barred from appellate review.
¶ 22. Further, we find that any solicitation of the comment was harmless error. The circuit judge instructed the jury that the defendant’s failure to testify could not be held against him. See Blue v. State, 674 So.2d 1184, 1215 (Miss.1996) (overruled on other grounds) (“[E]ven if the prosecutor’s comment highlighted [the defendant’s] failure to testify, the jury instructions, when considered as a whole, directed the jury to ignore the fact that [he] did not testify.”). There was also overwhelming evidence of guilt in this case. Therefore, we find this issue is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF SEXUAL BATTERY AND GRATIFICATION OF LUST, AND SENTENCES AS A HABITUAL OFFENDER OF THIRTY YEARS AND FIFTEEN YEARS, RESPECTIVELY, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The names of the victim and her mother have been changed to protect their identities.

. The names of the two witnesses who testified that they were victims of abuse have also been changed to protect their identities.

. Additionally, as the State notes, Ellis’s originally appointed defense counsel withdrew in March 2010, citing Ellis’s constant filing of bar complaints against him, and Ellis was appointed new defense counsel. Ellis filed numerous pro se motions during his incarcer *419 ation, giving the impression that he may have been uncooperative during the preparation phase of his trial.

. Although Ellis cites Gardner v. City of Tupelo, 76 So.3d 204 (Miss.Ct.App.2011), to support his argument that a jury should not be allowed to consider things not in evidence, we find the reliance on Gardner misplaced and inapplicable to the present situation. Gardner concerned the appeal of a zoning issue, not a jury verdict.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).