# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01273-COA

## CONSOLIDATED WITH

## 2005-KA-00526-COA

## AND

## 2006-KA-01607-COA

| | |
|---|---|
| TERRELL PATRICK CORVETTE HOPPER A/K/A TERRELL P. HOPPER A/K/A PATRICK | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATES OF JUDGMENT: | 11/12/2003; 07/24/2003 |
| TRIAL JUDGE: | HON. LARRY O. LEWIS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED IN CAUSE NO. 2003-0005 OF COUNT I, AGGRAVATED ASSAULT, AND COUNT II, AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCED TO TWENTY YEARS ON COUNT I AND THIRTY YEARS ON COUNT II, TO RUN CONSECUTIVELY; AND CONVICTED IN CAUSE NO. 2003-0006 OF COUNT IV, ARMED ROBBERY, AND SENTENCED TO THIRTY-SEVEN YEARS, TO RUN CONSECUTIVELY TO THE SENTENCES IN CAUSE NO. 2003-0005; AND COUNTS II, V, VI, VIII, AND IX, AGGRAVATED ASSAULT ON A LAW |

ENFORCEMENT OFFICER, AND
SENTENCED ON EACH COUNT TO
THIRTY YEARS, TO RUN
CONCURRENTLY TO THE SENTENCE IN
COUNT IV, ALL IN THE CUSTODY OF
THE MISSISSIPPI DEPARTMENT OF
CORRECTIONS

DISPOSITION:                      AFFIRMED: 03/28/2017

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     The Mississippi Supreme Court has granted out-of-time appeals of two convictions rendered more than ten years ago.[1] We address Hopper's claims on direct appeal in accordance with the supreme court's order.[2] Hopper's attorney originally submitted a single issue – that he is entitled to new trials because he received constitutionally ineffective assistance of counsel. Hopper has since filed a pro se supplemental brief asserting other issues.

**FACTS**

---

[1] The State argues that Hopper's claims would be best brought on a post-conviction-relief motion rather than a direct appeal. A reviewing court may address an ineffective-assistance-of-counsel claim on direct appeal if the issues presented are "based on facts fully apparent from the record." *Archer v. State,* 986 So. 2d 951, 955 (¶16) (Miss. 2008) (citing M.R.A.P. 22(b)). The record before us is sufficient to decide all of Hopper's claims.

[2] Docket number 2014-KA-01273-COA is the direct appeal of Coahoma County Circuit Court criminal cause numbers 2003-0006 and 2003-0005. The dismissed appeals, docket numbers 2005-KA-00526-COA and 2006-KA-01607-COA, have been consolidated with this appeal for record purposes only.

¶2.    Hopper has provided a thorough procedural history and set of facts on appeal:

*Procedural History of Trial 1*

On June 3, 2003, a Coahoma County [g]rand [j]ury returned a multi-count indictment against Terrell Patrick Corvette Hopper . . . and Patrick Parker, charging Hopper with aggravated assault and aggravated assault of a law enforcement officer and Patrick Parker with accessory after the fact.

Hopper was arraigned on June 13, 2003, represented by Charles McPherson. The case was assigned to the Honorable Circuit Court Judge Larry O. Lewis. A little over one month after his arraignment, Hopper and Parker were tried together. Hopper was convicted of both counts, and Parker was acquitted. Hopper was sentenced to twenty years for aggravated assault and thirty years for aggravated assault against a law enforcement officer, to run consecutively.

Hopper filed his motion for a new trial on August 25, 2003. That motion was denied on November 12, 2003.

*Procedural History of Trial 2*

On June 3, 2003, a Coahoma County [g]rand [j]ury returned a multi-count indictment against [Hopper,] . . . charging [him] with armed robbery, kidnaping, and nine counts of aggravated assault against a law enforcement officer.

Hopper was arraigned on June 13, 2003, [and again] represented by [McPherson]. The case was assigned to [Judge] Lewis. On November 10, 2003, Hopper was brought to trial and ultimately acquitted of three counts of aggravated assault, but convicted of six counts of aggravated assault. Hopper was sentenced to serve a total of thirty years concurrent on all counts of aggravated assault and thirty-seven years on armed robbery, to be served consecutive to Hopper's sentences in Trial 1, for a total of eighty-seven years putting the two trials' sentences together.

Hopper filed his motion for a new trial on December 6, 2003. That motion was denied on December 10, 2003.

*Additional Procedural History*

This Court originally docketed the appeals of Trials 1 and 2 as 2006-KA[-0]1607 and 2005-KA-[00]526, respectively. Because Hopper's attorney never

3

proceeded with his appeal, both appeals were dismissed. The cases languished until, through a series of post-conviction[-]relief and habeas petitions, the Mississippi Supreme Court allowed Hopper to proceed in an out[-]of[-]time appeal, and consolidated both trials into this cause number. The Supreme Court appointed the Indigent Appeals Division of the Office of State Public Defender. This case was subsequently assigned to [this Court].

*Facts of Trial 1*

On August 16th, 2002, in Friars Point, Mississippi, Doyle Hunter was in front of a local store when he was shot by [Hopper]. Hunter was hit in the face and in the shoulder blade. Hunter was transported to a hospital in Memphis and lived. Earlier that night Hunter and Hopper had a disagreement. Hunter was intoxicated. Hunter testified that he "didn't think" that the argument was over drugs and denied being in a gang. Hopper, however, testified that Hunter had told him that Chief Anthony Smith [of the Friars Point Police Department] wanted to see Hopper.

The afternoon of the next day, Chief [] Smith . . . having developed Hopper as a suspect in the shooting of Hunter, spotted who he believed to be Hopper. Chief Smith parked his vehicle, and, when he reached over to put his keys in his passenger seat, Chief Smith was shot through the lower neck, near his shoulder. When Chief Smith turned, he saw Hopper with a gun pointed towards him. Chief Smith yelled for a passerby, and directed him to use the radio to call the sheriff's department . . . By the time Chief Smith regained his faculties, Hopper had already fled the scene.

That evening, authorities communicated with [] Parker, who told them that Hopper had stopped by Parker's residence. Police attempted to arrest Hopper at Parker's house, but were unable to, the circumstances of which resulted in the charges in Hopper's second trial, discussed below.

Hopper was eventually apprehended at his grandmother's house. He was found hiding in a trunk. Police recovered a 9mm handgun. Hopper stipulated that the weapon was assigned to and used by Officer John Martin Harris with the Friars Point Police Department.

He was interviewed while at the hospital. Hopper had been shot prior to his arrest. Investigators testified that Hopper told them that Hopper had shot both Chief Smith and [] Hunter.

Hopper testified that on the night of [] Hunter's shooting, [] Hunter was

4

speaking to him about some drugs missing from Chief Smith . . . Hopper then realized that Joseph Brown had a gun in his face. Hopper and Edwin Brown, who was also there, wrestled over the gun and it accidently went off, hitting Hunter. In his testimony, Hopper flatly denied shooting Hunter.

Hopper testified that he, Hunter, Marcus Williams, and Edwin Brown were selling drugs. Hopper wished to stop selling drugs, because "it was getting too deep." Hopper testified that 15 kilos of cocaine had gone missing, and that he was being accused of stealing it. Hopper testified that the Friars Point Police Department was in the business of selling drugs, and Chief Smith and he had "made transactions" in the past.

Hopper admitted to shooting Chief Smith, but claimed to do so because if Chief Smith had taken him into custody, Hopper believed he would not make it to the jail and would be killed. Hopper testified that later that evening, he went to Parker's house when Parker was not there . . . .

*Facts of Trial 2*

In the early morning hours of August 18, 2002, Coahoma Sheriff Andrew Thompson was called to Parker's house where police believed they had located Hopper. When he arrived, it became apparent that two officers had been shot.

Officer Harris had gone to the house to speak with Parker. Parker was initially uncooperative, but agreed to go with officers. Parker asked if he could secure the residence, and Officer Harris and Deputy Victor Randall followed him, with guns drawn, because it was dark inside. Otha Hunter and Oliver Mitchell were also on the porch at the time. Officer Harris told Deputy Randall to cover the right side of the house, and Harris was to take the left. Officer Harris testified that he took three to four steps into the house and shots rang out.

Officer Harris saw that he was hit in the right elbow. After going to the hospital, he learned that he had been hit three times. Officer Harris testified he never fired a shot. Deputy Randall[, who] was behind Officer Harris, tried to grab him, but was shot himself. Deputy Randall backed out of the house, and Hopper shut the door and placed a piece of furniture in front of it. Hopper took Harris's gun, his extra magazine, and his handheld radio. Officer Harris testified that at one point Hopper tried to drag Officer Harris to the door to be released, but he could not because Hopper had been injured.

Hopper had taken a police radio and was screaming over the radio. While

5

Officer Harris was down, several shots were fired from the house, striking several vehicles. Eventually, law enforcement tried to enter the house using a stack, where several officers line up in a row behind a shield. When officers used the battering ram on the door, nothing happened. After using the ram again, it became apparent that something was against the door. At that point, shots rang out, hitting the shield.

[Several officers hid behind a shield], with Deputy Neil Mitchell . . . and Officer Kenny Scott in the back. Both [Deputy] Mitchell and [Officer] Scott were shot. Deputy Mitchell testified that while he was behind the shield, shots rang out, and he was hit in the right leg.

Eventually, Officer Harris had 911 call the law enforcement outside to let them know that Hopper had left the house . . . . Police recovered a [.]40 caliber pistol from the house. The parties stipulated that the firearm was Hopper's.

As noted above, Hopper was eventually arrested at his grandmother's house. Because he was shot, he was taken to the hospital, where he received treatment. In a statement to police, he admitted to shooting Officer Harris's 9mm handgun. At Hopper's grandmother's [house] police found a 9mm pistol. The parties stipulated that the pistol was that of Officer Harris.

Hopper testified that he was in Parker's house "trying to lay low," because he felt that his life was in danger. Hopper testified [that] when authorities were entering the house, he heard them yell[,] "Sheriff's Department," but before Hopper could raise his hands, Deputy Randall began to open fire, shooting Hopper in the arm, and Officer Harris in the back. Hopper testified that when the next group of officers attempted to enter the house, they, too, fired first. Hopper testified that he explained to Harris his fears of the Friars Point Police Chief, because of his involvement in the drug trade. Eventually, Hopper [handed] the phone to Officer Harris . . . and left the house.

(Internal citations omitted).

**DISCUSSION**

¶3.     Hopper's attorney makes various assertions on appeal regarding Hopper's ineffective-assistance-of-counsel claim: (1) in trial one, his attorney erred in failing to request an accident instruction; (2) in trial one, his attorney failed to move to sever his trial with

6

codefendant Patrick Parker; (3) his attorney failed to object to inadmissible evidence; (4) his attorney failed to move for a change of venue; and (5) his attorney failed to provide adequate representation. Hopper filed a pro se supplemental brief, including the following issues: (6) forensic expert Dave Zeliff's testimony violated the Confrontation Clause and was prejudicial; (7) the State withheld exculpatory evidence; (8) his indictments were defective; and (9) he was denied a speedy trial. We address each contention below.

¶4.     To prove his counsel was ineffective, Hopper must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. A strong but rebuttable presumption exists that counsel's performance was effective. *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999). "To overcome this presumption, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

### 1.     Jury Instruction

¶5.     Hopper first argues that his counsel erred in failing to request an accident instruction. "While a defendant is entitled to jury instructions that support his theory of the case, even where that theory is based solely on the defendant's own testimony, an evidentiary basis must still exist for the jury instruction." *Laurent v. State*, 94 So. 3d 1232, 1235 (¶13) (Miss. Ct. App. 2012). Here, Hopper stated that, in an altercation with Hunter, the gun "accidentally" went off several times. He also stated that he shot Chief Smith because of a "conspiracy"

7

between the police force and other drug dealers in the area. However, "[s]imply saying that you shot in self-defense or that the shooting was an accident [without other corroborating evidence] does not provide a defendant with an automatic right to instructions thereon." *Robinson v. State*, 726 So. 2d 189, 194 (¶19) (Miss. Ct. App. 1998). Without any evidentiary basis, Hopper's counsel would have no reason to request such an instruction. Hopper's first argument fails.

### 2. Severance of Trials

¶6. Hopper and Parker had different representation in a joint trial. Hopper argues his counsel was ineffective for failing to request severance of their trials.

> The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge. The court may, on motion of the [S]tate or defendant, grant a severance of offenses whenever:
>
> > 1. If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
> >
> > 2. If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

URCCC 9.03.

¶7. "Where all the evidence at trial went to the guilt of both [defendants] and not to one more than the other, it is not error to try the defendants jointly." *Buggs v. State*, 754 So. 2d 569, 573 (¶16) (Miss. 2000). The record shows that Parker was indicted as accessory after the fact. Parker's theory of defense was that he was under duress, with Hopper pointing a gun at his back. Hopper stated that he never had a gun to Parker's back and that he only saw

8

Parker for a few seconds right when he fled the scene. Because the decision whether to move for severance was within the purview of trial strategy, Hopper's claim fails. *See Cox v. State,* 793 So. 2d 591, 600 (¶41) (Miss. 2001).

### 3. Evidence

¶8. Hopper next argues that his counsel was ineffective in failing to object to evidence introduced in each trial regarding the incidents of the other trial. Specifically he refers to (1) defense counsel's stipulation in trial one that the gun recovered at Hopper's arrest belonged to Officer Harris; and (2) defense counsel's failure to object in trial two to references to the allegations in trial one. Hopper claims the evidence was more prejudicial than probative and should have been excluded under Mississippi Rule of Evidence 403.

¶9. "With respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective[-]assistance[-]of[-]counsel claim." *Shinn v. State*, 174 So. 3d 961, 965 (¶10) (Miss. Ct. App. 2015) (citation omitted). Hopper essentially argues that the stipulation of Officer Harris's gun in trial one was prejudicial because Hopper was charged with Officer Harris's assault in trial two. Although Hopper had two separate trials, the charged crimes stemmed from the same sequence of events. It is plausible that defense counsel stipulated to the gun in trial one because the officer who testified was simply testifying about the gun he recovered after Hopper's arrest.

¶10. "We presume that decisions not to object to testimony were strategic if they fairly can

be characterized as such." *Id*. at 967 (¶15). The "references" in trial two to the events of trial one occurred in the State's opening statement and Officer Thompson's testimony. Both of these references were almost unavoidable given the nexus between the crimes. We find defense counsel's decisions fell within the ambit of trial strategy. Thus, Hopper's argument fails.

### 4.    Change of Venue

¶11.    Hopper's next claim focuses on his attorney's failure to move for a change of venue, despite the local publicity surrounding both cases. Specifically, he refers to the voir dire in trial two, when the judge and defense counsel noted that the entire venire knew about the facts of the case.

¶12.    Our supreme court has held that defense counsel is under no duty to attempt to transfer venue and, therefore, the decision not to would fall within the realm of strategy. *Faraga v. State*, 514 So. 2d 295, 307 (Miss. 1987) (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). In *Faraga*, the entire venire had heard of the case due to pretrial publicity. *Id*. Faraga argued that his counsel was ineffective for failing to move for a change of venue. *Id*. The court ultimately held that trial strategy and the overwhelming evidence kept Faraga from meeting either prong of the *Strickland* analysis. *Id*. For the same reasons, Hopper's claim fails.

### 5.    Defense Counsel's Representation

¶13.    Hopper contends that his attorney failed to provide any "meaningful" representation. "The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel." *Bell v. State*,

879 So. 2d 423, 439 (¶50) (Miss. 2004). To say there was overwhelming evidence to convict Hopper at both trials is an understatement. At the first trial, over twenty witnesses testified on the State's behalf, including both victims. Fourteen witnesses, including the wounded officers, testified for the State at the second trial. It is highly improbable that, but for any of counsel's alleged professional errors, the outcome of Hopper's trials would have been any different. Even so, it is fully apparent from the record that Hopper received effective assistance of counsel.

### 6. Dave Zeliff's Expert Testimony

¶14. In Hopper's supplemental brief, he argues that forensic expert Dave Zeliff's testimony violated the Confrontation Clause and was prejudicial. Zeliff, a chief technician of the Mississippi Crime Laboratory, testified about the projectiles that were removed from police vehicles at the crime scene. Zeliff was present at the crime scene and recovered multiple projectiles, but not all. At trial, both parties stipulated to the following:

> A bullet projectile was recovered by Arthur Chancellor with the Mississippi Crime Laboratory from the driver's side door of the Coahoma County Sheriff's Department vehicle number 4. Said bullet, which is exhibit 87, was analyzed at the Mississippi Crime Laboratory, was found to have been fired by the pistol, which is exhibit 2, previously testified as being Officer Harris'[s] service weapon.

¶15. Hopper claims that his inability to cross-examine the technician who actually recovered this bullet violated the Confrontation Clause. Hopper made no objection at trial and has therefore waived the issue on appeal. *See Jenkins v. State*, 102 So. 3d 273, 283 (¶30) (Miss. Ct. App. 2011). Procedural bar notwithstanding, our supreme court held in *McGowen v. State*, 859 So. 3d 320, 339 (¶68) (Miss. 2003), that, "when the testifying witness is a

11

court-accepted expert in the relevant field who participated in the analysis in some capacity, . . . then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." Zeliff was in charge of the crime scene and processed the crime scene. He clearly participated in the analysis of the evidence recovered. Thus, we cannot say Hopper's Sixth Amendment rights were violated. Further, Hopper has failed to show how he was prejudiced by the stipulation or Zeliff's testimony.

### 7. Exculpatory Evidence

¶16. Hopper next claims that the State withheld exculpatory evidence, notably that the gun Hopper used was registered to Joseph Brown. His contention is simply not true. In both trials, Agent Joey Hall testified that, after running a check on the gun, he discovered Brown was the sole, original owner. He further explained that Brown bought the gun for Hopper and gave it to Hopper shortly thereafter. Hopper also testified to the same effect. Consequently, his argument lacks any merit.

### 8. Defective Indictment

¶17. Hopper also claims that his aggravated-assault indictments were defective because they did not specify "serious" bodily injury. Both indictments stated that Hopper caused bodily injury with a deadly weapon (specifically, a pistol). When Hopper was indicted in 2003, Mississippi Code Annotated section 97-3-7(2)(b) (Rev. 2002) read, in pertinent part:

> A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.

12

¶18. Hopper's claim is nearly identical to that of the defendant in *Russell v. State*, 924 So. 2d 604 (Miss. Ct. App. 2006). In that case, the court stated that "[i]t is clear from the plain language of section 97-3-7(2)(b) that a defendant can be found guilty of aggravated assault if, with the aid of a deadly weapon, he attempts to cause or purposely or knowingly causes any degree of 'bodily injury.'" *Russell*, 924 So. 2d at 607 (¶6). Thus, the court held that "an indictment charging aggravated assault pursuant to section 97-3-7(2)(b) must only allege that the defendant purposefully or knowingly caused or attempted to cause bodily injury to another with a deadly weapon." *Russell*, 924 So. 2d at 607 (¶6). Hopper's claim fails.

### 9. Speedy Trial

¶19. For the first time on appeal, Hopper argues that he was denied the right to a speedy trial. The balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), applies when a defendant's constitutional right to a speedy trial is questioned. *Ellis v. State*, 141 So. 3d 415, 418 (¶8) (Miss. Ct. App. 2013). The test consists of four factors: "(1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay." *Id.* (quoting *Noe v. State*, 616 So. 2d 298, 300 (Miss. 1993) (citing *Barker*, 407 U.S. at 530)). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* (citing *Barker*, 407 U.S. at 530. A delay of eight months or longer is presumptively prejudicial. *Noe*, 616 So. 2d at 300. Hopper committed the crimes in August 2002, was indicted in June 2003, and had his trials in July 2003 and November 2003. So there was

roughly an eleven-month delay for the first trial and a fifteen-month delay for the second.

¶20. When the speedy-trial issue is raised for the first time on appeal, we must determine whether plain-error review is applicable, i.e., whether an "error of the trial court has impacted upon a fundamental right." *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996). *See also Morgan v. State*, 793 So. 2d 615, 617 (¶19) (Miss. 2001) (Plain-error review is applicable when the error is "so fundamental that it generates a miscarriage of justice[.]"). In *Dora v. State*, 986 So. 2d 917, 924-26 (¶¶15-20) (Miss. 2008), the Mississippi Supreme Court noted that Dora tried to "leapfrog" over the required plain-error analysis by making assertions under the *Barker* factors. The court ultimately found that there was no plain error and that a defendant's failure to raise the issue of speedy trial with the trial court had waived the issue on direct appeal. *Id*.

¶21. Hopper has in no way shown how his delay resulted in a miscarriage of justice. Similarly to the defendant in *Dora*, Hopper failed to raise a speedy-trial issue at trial, making his claim on direct appeal procedurally barred. *See also Ellis*, 141 So. 3d at 418 (¶8). However, we dismiss Hopper's claim without prejudice so that he may raise it as an ineffective-assistance-of-counsel claim in a post-conviction relief motion, if he so chooses.

**CONCLUSION**

¶22. We find Hopper received effective assistance of counsel. We also find Hopper's claims in his supplemental brief are without merit. Therefore, we affirm.

¶23. **THE JUDGMENTS OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION IN CAUSE NO. 2003-0005 OF COUNT I, AGGRAVATED ASSAULT, AND COUNT II, AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF TWENTY YEARS ON COUNT I AND THIRTY**

14

YEARS ON COUNT II, TO RUN CONSECUTIVELY; AND CONVICTION IN CAUSE NO. 2003-0006 OF COUNT IV, ARMED ROBBERY, AND SENTENCE OF THIRTY-SEVEN YEARS, TO RUN CONSECUTIVELY TO THE SENTENCES IN CAUSE NO. 2003-0005; AND COUNTS II, V, VI, VIII, AND IX, AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE ON EACH COUNT OF THIRTY YEARS, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT IV, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.

LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND WESTBROOKS, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.