CARLTON, J.,
dissenting:
¶ 16. I respectfully dissent because I would reverse and render the circuit court’s judgment and reinstate the decision of the governing board of supervisors.
¶ 17. The Board decided to rezone the property at issue from A-l, a general agricultural district, to A-2, an agricultural residential district (large-lot development), which would allow the development of large-lot affordable residential homes on safer and higher ground north of Interstate 10. The record reflects that substantial credible evidence supported the Board’s decision to rezone the property, and substantial evidence showed that the Board’s decision was supported by clear and convincing evidence demonstrating the following: (1) a change in the character of the neighborhood; (2) a population shift; and (3) an increased public need for affordable residential housing after Hurricane Katrina, the implementation of new residential housing codes, and the increase in home insurance rates in the coastal area.
¶ 18. The evidence before the Board sufficiently established a population shift north and a public need for large-lot affordable quality homes on land that is located in higher and dryer areas, such as the land at issue in this case. The Mississippi Supreme Court has long recognized that such evidence of public need and associated change in the character of a neighborhood provides a sufficient evidentiary basis for a zoning change. See generally Edwards v. Harrison Cnty. Bd. of Supervisors, 22 So.3d 268, 275-79 (¶¶ 24-36) (Miss.2009) (acknowledging a substantial change in the neighborhood and a public need post-Hurricane Katrina). The judiciary exceeds its role in such cases when it weighs de novo the evidence considered by the governing board of supervisors instead of abiding by the applicable standard of review to determine whether the decision was supported by substantial evidence or was arbitrary and capricious.[2]
*1119 ¶ 19. I respectfully submit that an application of our standard of review to the Board’s decision requires reinstatement of the Board’s decision. I must acknowledge that the decision of a governing board of supervisors to rezone will be set aside only if the record clearly shows the decision is arbitrary, capricious, discriminatory, illegal, or without a substantial evidentiary basis. See Edwards, 22 So.3d at 274 (¶ 17). See also URCCC 5.03 (discussing the scope of appeals from administrative agencies).
¶ 20. A review of the evidence and testimony the Board received before rendering its decision reflects that the decision was neither arbitrary nor capricious. Rather, the evidence shows that, in approving the application and request to rezone the land in question from A-l to A-2 for development of large-lot homes to provide affordable housing north of Interstate 10, the Board based its decision upon clear and convincing evidence.[3] The record also reflects that the Board acted consistently with its own comprehensive plan adopted post-Hurricane Katrina.
¶ 21. In the present case, the evidence of changed character in the neighborhood included the development of additional neighborhoods to the north of the property, as well as improvements to and extension of utilities, water, and sewer services to the previously unserved area at issue.[4] Testimony before the Board provided that such new utility, water, and sewer service to the area stood as a leading indicator of a change in the neighborhood.[5] The record reflects that the extension of and improvements to the utility, water, and sewer services were begun after the devastation to the Mississippi Gulf Coast by Hurricane Katrina. These steps were taken to accommodate the public need for residential housing by providing safer residential housing north of Interstate 10 and north of the coastal waters in accordance with the implementation of a state plan and Jackson County’s own comprehensive zoning plan. See generally Edwards, 22 So.3d at 276 (¶ 26) (acknowledging that substantial change occurred to the coastal area due to the devastation of Hurricane Katrina). The record also contains evidence that the population of the area is shifting north, away from the coastline, and to higher ground.
¶ 22. Also indicating a change in the character of the neighborhood, the record reflects that the insurance rates for housing in the coastal areas near the water increased after Hurricane Katrina and that these increased rates resulted in residents’ inability to afford housing in areas too close to the water and coastline areas. In addition to increased insurance rates for housing, the record reflects that enhanced building codes were also implemented after Hurricane Katrina, further diminishing *1120 the availability of affordable housing in areas near the water and coastline. The record also contains evidence of new construction of Highway 57 toward the site at issue, providing new highway access for the area.
¶ 23. As acknowledged, the record reflects that Jackson County adopted a new comprehensive zoning plan after Hurricane Katrina to assist in improvements to infrastructure such as utilities, water, and sewer services to allow development of affordable housing in certain areas, including the area at issue, that were on higher and safer ground north of Interstate 10. As acknowledged by the supreme court in Edwards:
Mississippi statutes provide for comprehensive zoning plans for municipalities and counties. Mississippi Code [Annotated] [s]ection 11-1-17(1)(a) [(Rev. 2002) ] provides in part that [t]he governing authority of each municipality and county may provide for the preparation, adoption, amendment, extension[,] and carrying out of a comprehensive plan for the purpose of bringing about coordinated physical development in accordance with present and future needs.
Edwards, 22 So.3d at 275 (¶ 21) (citations and internal quotation marks omitted). The Edwards court further acknowledged that a balance must be struck with rezoning issues to provide for inevitable change in an orderly manner to meet public needs. Id.
¶24. In the present case, the record reflects unrefuted testimony that the Mississippi Gulf Coast counties received approximately ten million dollars after Hurricane Katrina to implement comprehensive plans and to assist with improvements to and extensions of utility, water, and sewer services to enable development of affordable residential homes in safer coastal areas. Testimony also demonstrated the public need for affordable- and quality housing in the area. An established realtor testified that the Mississippi Gulf Coast area at issue lacked affordable new residential housing north of Interstate 10. The realtor further testified that no new housing was available for his clientele consisting primarily of medical professionals and engineers who worked in the area.
¶25. In addition, the owner of the property at issue testified that the proposed development included no Section 8 or federal-subsidized housing but rather included only low-density development with larger quality homes and larger lots. The property owner also testified that residents sought to live north of Interstate 10 because of population growth and because the location was higher and dryer and, therefore, safer.
¶26. Testimony from the developer, Wrigley, provided that the initial request to change the zoning from A-l to A-3 was modified to a request to change the zoning to A-2. Wrigley explained that the change in the request was modified to A-2 based upon and to accommodate the concerns of residents. Wrigley further stated that the development would contain no more lots than if zoning remained at A-l. Wrigley explained that, while A-2 zoning would allow for the development of half-acre lots, the development would still be capped at the number of lots allowed for A-l zoning.
¶ 27. Based upon the foregoing, I respectfully submit that substantial evidence reflects that the Board based its decision upon clear and convincing evidence of a change in the character of the neighborhood and that substantial evidence in the record supported the Board’s decision to grant the requested rezoning from A-l to A-2. Furthermore, I find the record reflects that the Board’s decision was not arbitrary or capricious and that the judi- *1121 eiary is therefore without authority to reverse the decision of this governing body.[6]
GRIFFIS, P.J., AND BARNES, J., JOIN THIS OPINION.

. See Edwards, 22 So.3d at 279 (¶ 36) (acknowledging a substantial change in the neighborhood due to the devastation Hurricane Katrina caused to the Mississippi Gulf Coast); Childs v. Hancock Cnty. Bd. of Supervisors, 1 So.3d 855, 861 (¶ 19) (Miss.2009) (determining that substantial evidence supported a board's finding of public need for economic development in an area devastated by Hurricane Katrina and that a lack of economic development in the area supported the decision to rezone). See also Thomas v. Bd. *1119 of Supeivisors of Panola Cnty., 45 So.3d 1173, 1180-81 (¶¶ 20-22) (Miss.2010) (finding that substantial evidence showed a public need for a recycling facility and supported the rezoning of an agricultural area).

. See Childs, 1 So.3d at 859-60 (¶ 13) (citing the standard of review applicable to determine whether the character of a neighborhood has changed so as to justify rezoning).

. Cf. Gentry v. City of Baldwyn, 821 So.2d 870, 873-74 (¶¶ 9-12) (Miss.Ct.App.2002) (recognizing similar development and improved utilities in the area as part of the evidence sufficient to show a change in the character of the neighborhood and to support the city's rezoning decision).

. See generally Edwards, 22 So.3d at 279 (¶ 36) (finding that substantial evidence supported a board’s decision that the character of the neighborhood had changed post-Hurricane Katrina and that a public need existed for rezoning to foster economic and commercial development).

. See Edwards, 22 So.3d at 274 (¶ 17).